*524
 
 Keating, J.
 

 Angelo Minichiello alleges in his complaint that, between September, 1963 and March, 1964, he performed certain services for appellant Royal Business Funds Corporation (Royal) and defendant Small Business Investment Company of New York (SBIC).
 

 As alleged in Mr. Minichiello’s complaint, Royal and SBIC had become the owners of “ a substantial amount of the convertible debentures issued by Colorama Features, Inc.” After a default by Colorama in September, 1963, plaintiff alleges that, at the request of defendants Royal and SBIC, he found a purchaser (the defendant Jayark Films Corporation), who bought from them the convertible debentures of Colorama as well as certain Colorama stock.
 

 Plaintiff claims from Royal $25,000 for these services as well as $5,000 for finding defendant Jayark as a source of investment for defendant Royal. Plaintiff has no written memorandum of his alleged contract with defendants.
 

 Royal moved to dismiss Minichiello’s complaint on the ground that his action is barred by the Statute of Frauds (General Obligations Law, § 5-701). The Appellate Division affirmed Special Term’s denial of this motion, Justice SteueR. dissenting (25 A D 2d 502).
 

 The issue thus presented on this appeal is whether the order of Special Term denying appellant’s motion to dismiss on the ground that this action is barred by the Statute of Frauds was properly made.
 

 As enacted in 1949, subdivision 10 of section 31 of the Personal Property Law, now contained as amended in the General Obligations Law (§5-701, subd. 10), applied the Statute of Frauds to any agreement which: “Is a contract to pay com
 
 *525
 
 pensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will,. inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest ’ ’.
 

 This section was subsequently construed by lower courts to permit recovery, despite the absence of a writing, in
 
 quantum meruit.
 
 (See
 
 Gibson
 
 v.
 
 Archer Prods.,
 
 281 App. Div. 661 [1st Dept., 1952];
 
 Wells
 
 v.
 
 Dent, 4
 
 A D 2d 307 [4th Dept., 1957].) The section has also been construed to be inapplicable to business “finders” as opposed to brokers. (See
 
 Wells
 
 v.
 
 Dent,
 
 supra;
 
 Kuffler
 
 v.
 
 List,
 
 144 F. Supp. 776 [S. D. N. Y., 1956].) Our court has never passed on either question.
 

 In 1964, the Legislature amended subdivision 10 to clearly apply the section to finders and to preclude any recovery in
 
 quantum meruit.
 
 The amended section thus provides “ ‘ Negotiating ’ includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law”.
 

 Since plaintiff’s cause of action accrued before the effective date of the amendment, it is necessary for us to construe the meaning of subdivision 10 of section 31 of the Personal Property Law as it was enacted in 1949, and before the passage of the 1964 amendment.
 

 In recommending the amendment to subdivision 10 of section 5-701, the Law Revision Commission characterized it as a clarification of the
 
 original
 
 intent of the 1949 Legislature, stating with respect to the amendment: “ Its purpose is to make clear that the contracts required to be evidenced by writing include a contract or agreement for the compensation of a business broker for acting as a ‘ finder ’, ‘ originator ’ or ‘ introducer, ’ or for assisting in the negotiation or consummation of the transaction, and that the requirement cannot be avoided by an action for compensation in quantum meruit.” (N. Y. Legis. Doc., 1964, No. 65[F].)
 

 Although, undoubtedly, the 1964 Law Revision Commission cannot conclusively determine the intent of the 1949 Legislature,
 
 *526
 
 the above statement of the commission, constitutes a declaration of its own intent in proposing’ the statute, which has some bearing on the legislative intent in enacting the proposed section.
 

 The briefs for each side have considered at some length various sources of legislative history surrounding the enactment of subdivision 10 of section 31.
 

 The Law Revision Commission’s recommendation to the 1949 Legislature failed to consider, explicitly, the two issues: (1) whether recovery could be had in
 
 quantum meruit
 
 and (2) whether the statute was to apply to finders.
 

 Accordingly, appellant has stressed the study prepared at the direction of the commission by Professor Braucher of Harvard, which did consider these issues, and respondent has correspondingly urged that the study should be accorded no weight.
 

 Although a study like this is entitled to some weight in determining the legislative intent particularly where it accompanies the commission’s report to the Legislature, the intention of the Legislature in this case can be far better perceived by examining the purpose of the statute.
 

 In its brief recommendation to the Legislature, the Law Revision Commission stated its reason for proposing subdivision 10 of section 31: “In recent years there have been a substantial number of reported eases of claims for commissions for services rendered in the sale of a going business or a business opportunity. Under existing law there is no requirement that business brokers’ contracts for commissions be in writing. The nature of the transactions is such that, in the absence of the requirement of a writing, unfounded and multiple claims for commissions are frequently asserted, and employers often seek to escape liability by denying the fact of employment. These controversies are commonly resolved by juries on conflicting testimony, with the consequent danger of erroneous verdicts ” (1949 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1949, No. 65 (G), p. 615]).
 

 Thus, the commission believed that the ‘ ‘ danger of erroneous verdicts ” in allowing a jury to determine this type of case on oral testimony warranted the writing requirement.
 

 
 *527
 
 The nature of the services rendered hy business brokers and finders is such that a demand for payment is not usually made until they have completed their services. Thus, to allow recovery for the reasonable value of these services is to substantially defeat the writing requirement.
 

 We should not ascribe to the Legislature such a paradoxical purpose.
 

 Similarly, if the Legislature intended to avoid erroneous verdicts in this type of case, exclusion of finders from the operation of subdivision 10 of section 31 would he inexplicable.
 

 If, indeed, there is any definite distinction between finders and brokers, it would probably be in the quantity of services rendered by each. It is possible for a finder to accomplish his service by making only two phone calls and, if the parties later conclude a deal, he is entitled to his commission. But the difficulty in proving services ordinarily varies in an inverse proportion to the amount of services rendered.
 

 Thus, to include brokers and to exclude finders from the statute is to permit oral testimony in the very cases which are the least susceptible to oral proof.
 

 Accordingly, we conclude that the 1949 Legislature intended to include finders within the operation of subdivision 10 of section 31 and to preclude any .recovery in
 
 quantum meruit.
 

 Respondent has contended that, even if we interpret subdivision 10 of section 31 in this way, his case nevertheless falls without the operation of the statute. This he bases on the following language of the section, applying it to contracts to pay for services rendered: “In negotiating the purchase, sale *
 
 *
 
 * of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation ”.
 

 Respondent argues that since appellant Royal sold only at most 50% of the voting stock of Colorama, while SBIC sold the remainder, he did not negotiate the sale of a “ majority of the voting stock interest ’ ’, within the meaning of the statute.
 

 This argument is without substance. The phrase ‘ ‘ including a majority of the voting stock interest ” in no way limits the application of the preceding language. To apply the provision only when a single seller owns a-majority stock interest would
 
 *528
 
 be contrary to the intent of the Legislature and the plain meaning of the statute.
 

 The order should be reversed, with costs, and the certified question answered in the negative.
 

 Chief Judge DesmoND and Judges Fuld, VaN Vooehis, Buekb, Scileppi and Bebgah concur.
 

 Order reversed, with costs in this court and in the Appellate Division, and matter remitted to Special Term for further proceedings in accordance with the opinion herein. Question certified answered in the negative.