Louis O'D. LEE, Plaintiff-Appellee-Appellant,

v.

ST. JOE PAPER COMPANY, Defendant-Appellant-Appellee.

No. 83, Docket 30357.

United States Court of Appeals
Second Circuit.

Argued Oct. 20, 1966.

Decided Jan. 25, 1967.

Edward F. Butler, Conboy, Hewitt, O'Brien & Boardman, R. L. Duff, New York City, for plaintiff-appellee-appellant.

Irving Rozen, Weisman, Celler, Allan, Spett & Sheinberg; Sullivan & Cromwell, New York City, for defendant-appellant-appellee.

Before WATERMAN, HAYS and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge.

In this diversity suit governable by the law of the State of New York, St. Joe Paper Company appeals from a judgment of the United States District Court for the Southern District of New York entered on a jury verdict of $140,000 in favor of Louis O'D. Lee for the value of his services as a business broker or finder and from an additional award by the court on that verdict of $42,840, pre-judgment interest.[1] Lee, maintaining that he is entitled to a larger interest award, cross-appeals from the interest awarded.

St. Joe Paper Company (St. Joe) is a Florida corporation. It owns timberlands in Florida, has a paperboard manufacturing facility in Port St. Joe, Florida, and several box manufacturing plants located elsewhere in the United States. Lee describes himself as an industrial and management consultant. He maintains an office in New York City from which he conducts various activities including those of a broker and salesman of raw materials and machinery used in

1. Defendant not only appeals from the judgment of $182,840, but also from the denial of its several motions for a di- rected verdict, to set aside the verdict, to reduce the verdict as excessive, and for a new trial.

the pulp and paper industry. Upon requests made of him by St. Joe's chief executive, Edward Ball, whom he had known for many years, Lee had participated in a number of business transactions with St. Joe prior to the one at issue.

In August 1956 Lee called upon Ball while Ball was in New York City and showed him a magazine article about an Irish company, National Board & Paper Mills, Ltd. (National) which had recently put a box plant into operation at Waterford, Ireland. Lee suggested that St. Joe might be interested in investing in the Irish plant so as to gain a foothold in the overseas market, and he pointed out a number of advantages in production cost, tariff, and tax savings which would accrue from the combined operation. Ball indicated that he was interested and directed Lee to get more information about the Irish operation.

Thereafter Lee conducted an extensive correspondence with Frank Williamson, the Managing Director of National, in order to gather necessary technical and financial information about the Waterford facility. He forwarded this correspondence to Ball who indicated further interest by inviting Williamson to come to the United States to negotiate a probable transaction. To this Williamson suggested that negotiations should be conducted in Ireland. This was agreed to, and in October 1957 Lee and Ball traveled to Ireland and inspected the Waterford plant on October 18, 1957. In the days following this inspection Lee and Ball met various representatives of National to discuss future relationships. A few days after these meetings Lee and Ball went to Dublin and there met with Dr. Beddy, the spokesman for the Industrial Credit Company, Limited (Industrial Credit) and The Irish Assurance Company (Irish Assurance), the two government owned companies which owned the common and preferred stock of National. Lee claims Ball reached Dr. Beddy, who proved to be the man with the authority to negotiate for any contract, through Lee's contacts; Ball claims the introduction came about

through information furnished directly to him by a William Bennett, a New York banker. No contract was consummated between Ball and Beddy at that time because Ball needed the approval of the St. Joe Board of Directors before committing his company.

On November 6, 1957, Beddy, acting on behalf of Industrial Credit, sent a letter to Ball in Florida, granting St. Joe a 90-day option to purchase the common and preferred stock of National. This option was never accepted by St. Joe, but extensive negotiations between Dr. Beddy and St. Joe culminated in an elaborate agreement of May 8, 1958 between St. Joe and Industrial Credit. This agreement gave St. Joe a 5-year and 3-month option, later extended for three additional years, to purchase the stock of National for the equivalent of $1,755,-373. The consideration for the option was £100,000 per year, such payments to the extent that they exceeded certain debts of National to be credited against the purchase price if the option was exercised. The agreement also provided that St. Joe have immediate and exclusive management control of National.

Lee, who returned from Europe separately from Ball, learned about the November 6th option from Ball. Lee then flew to Florida on November 16th to meet Ball and discuss his compensation for his efforts in the matter. Ball and the other representatives of St. Joe differed substantially from Lee as to the amount to which Lee was entitled. Lee wanted $132,000 in the form of a stock participation in National; Ball offered $10,000 or $20,000 if Lee would remain and help negotiate a final transaction with Industrial Credit. After this Lee and Ball parted company. Lee took no part in the subsequent negotiations with Industrial Credit which led to the May 8th agreement and indeed was unable to find out about that agreement until after he instituted legal proceedings.

St. Joe proceeded to take over the management of National and to make payments to maintain its stock purchase

option, but as of the date of the trial herein it had not exercised the option.

Lee commenced this action on December 2, 1960 in New York Supreme Court, New York County. As there had been no written contract between Lee and St. Joe providing for payment to Lee of any specified sum for any services he might render St. Joe the action was brought to recover the value *in quantum meruit* of plaintiff's alleged services as a business broker or finder in allegedly bringing about defendant's opportunity to acquire the Irish corporation's stock. St. Joe removed the case to the court below on the ground of diversity of citizenship. St. Joe then moved for summary judgment on the ground that the New York Statute of Frauds then in effect, New York Personal Property Law Section 31(10), enacted in 1949 (now contained, as amended in 1964, in New York General Obligations Law, McKinney's Consol. Laws, c. 24-A, Section 5–701(10)), barred Lee's recovery in the absence of a written memorandum or agreement between the parties. The motion was denied. The case proceeded to trial, St. Joe moved for a directed verdict on the ground that the statute applied, the trial judge

denied the defendant's motion and in so ruling held that the statute did not bar Lee's action here. Although this determination would seem to have been correct at the time it was rendered in January, 1966,[2] a subsequent interpretation of the statute by New York's highest court, the New York Court of Appeals, in Minichiello et al. v. Royal Business Funds, et al., 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793, December 30, 1966, while the within appeal has been *sub judice*, has made it clear that the statute does indeed bar Lee's action.

In *Minichiello* the New York Court of Appeals was faced with a similar situation to the one we are faced with here. Plaintiff sought recovery *in quantum meruit* for the value of services allegedly rendered to defendants for finding a source of investment through the purchase of all the stock of a corporation. Plaintiff had no written memorandum of his alleged contract. Defendant moved to dismiss the complaint on the ground that the action was barred by the 1949 Statute of Frauds in effect prior to the 1964 amendment. The Court of Appeals concluded "that the 1949 Legislature intended to include finders within

**2.** The pertinent section of the 1949 act, Personal Property Law § 31(10) reads as follows:

Agreements required to be in writing

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

\* \* \* \* \*

10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. \* \* \*

Subdivision 10 had been added by the Legislature in 1949 upon the recommendation of the Law Revision Commission, which had stated:

"Its purpose is to provide that contracts or agreements for the compensation of business brokers must be evidenced by a memorandum in writing and signed by the party to be charged." 1949 Leg.Doc. No. 65(G); 1949 Report, Recommendations and Studies, pp. 609–651.

Despite this indication of legislative purpose, the section was subsequently construed by lower New York courts to permit recovery, despite the absence of a writing, *in quantum meruit*. See Gibson v. Archer Productions, Inc., 117 N.Y.S.2d 438, 281 App.Div. 661 (1st Dept.1952); Wells v. Dent, 4 A.D.2d 307, 164 N.Y.S.2d 646 (4th Dept.1957). And, as explained by the Court of Appeals in Minichiello, 18 N.Y.2d 521 at 525, 277 N.Y.S.2d 268 at 270, 223 N.E. 2d 793 at 794; "The section has also been construed to be inapplicable to business 'finders' as opposed to brokers. (See Wells v. Dent, supra; Kuffler v. List, 144 F.Supp. 776 [S.D.N.Y., 1956].)" This interpretation has now been reversed by Minichiello.

the operation of subdivision 10 of section 31 and to preclude any recovery in *quantum meruit.*" Minichiello et al. v. Royal Business Funds, et al., 18 N.Y.2d 521 at 527, 277 N.Y.S.2d 268 at 272, 223 N.E.2d 793 at 796.

Judgment reversed [3] and entry of judgment for defendant is ordered.

---

3. See Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941).