OPINION OF THE COURT
Frank R. Bayger, J.
The principal issue presented in this case is whether a licensed real estate salesman may recover a finder’s fee or sale commission allegedly due under an oral agreement to compensate him for services rendered as a business broker. Suit was brought by the plaintiff, Koontz, a licensed real estate salesman, and his business brokerage, E. R. Koontz & Associates (Associates), a partnership comprised of Mr. Koontz and his wife, to recover commissions allegedly due as a result of the defendant Astronics Corporation’s (Astronics) purchase of the codefendant, United Business Equipment Corporation (UBEC). In partial answer to the amended complaint which alleges multiple causes of action in breach of contract, quantum meruit and conspiracy, the *1050 defendants have pleaded the bar of the Statute of Frauds (General Obligations Law, § 5-701, subd a, par 10).
By written agreement dated June 6, 1975, Astronics agreed to pay Associates specified commissions in the event it thereafter acquired any company proposed by Associates within one year of the date of such proposal. Associates submitted UBEC as a prospective acquisition on December 5, 1975, but the parties’ negotiations proved unsuccessful and the proposal was abandoned in June, 1976. While the action thus involves a written commission agreement which fully satisfies the Statute of Frauds, subsequent developments made that writing irrelevant to the basic issue presented herein.
Associates was operated by Koontz and his wife as a completely independent business brokerage, totally separate and apart from the plaintiff’s licensed, part-time association with Purvis and Brown, Inc., a licensed teal estate broker. The business brokerage was incorporated as E.R. Koontz & Associates, Inc. (Koontz, Inc.) in July, 1976, and a certificate of dissolution of the Associates partnership was thereafter recorded in the Erie County Clerk’s office on December 31 of that year. In February, 1977, Koontz again spoke to Astronics’ president, the deféndant Keane, with respect to the UBEC proposal. He was allegedly informed that if UBEC would accept a more reasonable down payment, Astronics would be willing to proceed with that acquisition. Keane is said to have orally authorized Koontz to pursue the matter further and while he had no subsequent contact with Astronics, Koontz allegedly had several meetings with various UBEC officials, including its president and principal owner, the defendant Snethen, to whom he submitted a requested analysis and written sale proposal, apparently on behalf of Koontz, Inc., on September 27, 1977. Astronics purchased UBEC the following November, without notice to Koontz, allegedly as a result of the independent efforts of the defendant, Banta. Plaintiff’s claims for a sale commission or finder’s fee under the June 6, 1975 agreement, or the alleged oral agreements of the respective defendants, have been denied by all parties to that transaction and the defendants now *1051 move for summary judgment dismissing the amended complaint herein.
Astronics’ liability under the June 6, 1975 commission agreement was expressly conditioned upon a proposed acquisition’s accomplishment within one year of its proposal. The UBEC acquisition was initially submitted by Koontz and Associates in December, 1975. It was not accomplished, however, until November, 1977, or one year after plaintiff’s entitlement under that agreement had expired. And since the agreement was clear and unambiguous in that regard, any oral modification or extension of its terms as was allegedly agreed upon in connection with the “resubmission” of the UBEC proposal in February, 1977, is clearly void and unenforceable under the Statute of Frauds (Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, 379-380) unless that oral agreement falls within the exemption which the Statute expressly accords licensed real estate salesmen (General Obligations Law, §,5-701, subd a, par 10).
As it relates to this case, the Statute of Frauds renders every express or implied promise to pay compensation for services rendered in originating, negotiating, or otherwise assisting the sale of a business, void and unenforceable unless it is in writing and effectively subscribed by the party to be charged therewith (General Obligations Law, § 5-701, subd a, par 10). The statute does not apply, however, to agreements to compensate “an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman.” (General Obligations Law, § 5-701, subd a, par 10.) Therefore, to the extent that Keane’s remarks in February, 1977, or any subsequent conversations with UBEC and Snethen may be said to represent an express or implied promise to pay Koontz, his partnership, or his corporation, for services rendered in connection with this acquisition, such promises are void and unenforceable, whether by suit in contract or quantum meruit, unless the promisee was so licensed (Minichiello v Royal Business Funds Corp., 18 NY2d 521; Cohon & Co. v Russell, 23 NY2d 569; Bradkin v Leverton, 26 NY2d 192; Small v Marchese, 98 Misc 2d 295). Neither Associates, nor Koontz, Inc., were licensed as a real estate broker or salesman *1052 under article 12-A of the Real Property Law (L 1922, ch 672, as amd) and any claim founded upon an oral promise to compensate either of those firms for services rendered in connection with this sale is thus barred by the Statute of Frauds (cf. Small v Marchese, supra; Samit v Knapp, 144 NYS2d 164). Plaintiff’s request to add Koontz, Inc., as a party plaintiff pursuant to CPLR 1003, is therefore denied.
And while Koontz was, at all times, a licensed real estate salesman, I do not believe that license served to exempt his alleged agreements with Keane and Snethen from the requirements of the statute so as to allow his personal recovery herein. Although the exemption accorded licensed real estate brokers and real estate salesmen is not limited to agreements made in connection with real estate transactions; and a licensed broker may therefore enforce a verbal agreement to pay a finder’s fee or sale commission earned in connection with a nonreal estate business transaction (Bin-Nun v Instrument Systems Corp., Special Term, NY County, Oct., 1972, affd 41 AD2d 733), I believe a more limited rule applies in the case of a real estate salesman. I am unaware of any reported decision on this precise issue, but the statute’s legislative history (cf. NY Legis Doc, 1949, No. 65[G]) leads me to believe that a salesman may enforce such oral agreements only if he were acting in his licensed capacity, that is, as an employee or .associate of his licensed broker (cf. Small v Marchese, supra). The applicability of the exemption depends, in my view, not upon the nature of the transaction underlying a broker’s or salesman’s claim, but upon the licensed status of the claimant. Therefore, with respect to a licensed real estate salesman, I believe the exemption applies only when he is acting under the auspices and control of a licensed broker in accordance with the licensing and regulatory provisions of article 12-A of the Real Property Law (L 1922, ch 672, as amd). As of the date of enactment of the prior Statute of Frauds (Personal Property Law, §31, subd 10; L 1949, ch 203), licensed real estate salesmen were considered to be employees of their licensed broker. A salesman’s license was retained at all times in the custody and control of his broker and was expressly conditioned upon the continuing existence of that employer-employee relationship. Today’s *1053 licensing provisions speak in terms of their “association” rather than a strict employer-employee relationship, but a salesman’s license is still dependent for its validity upon a broker’s continuing sponsorship, supervision and control (see Real Property Law, § 440, subd 2; §§ 441-d, 442-b, 442-c). Thus the real estate licensing and regulatory scheme to which section 5-701 refers, and upon which this exemption is founded, does not contemplate, license, nor otherwise sanction any real estate salesman’s activity except that which is carried on under the aegis of a licensed broker. It would seem to follow that activities carried on independently of a broker’s supervision and control are without the scope of a real estate salesman’s license and beyond the intended reach of the statutory exemption upon which the plaintiff relies herein.
Such a legislative intent may also be inferred from the report and recommendation of the statute’s sponsor, the Law Revision Commission, which states: “Attorneys at law and auctioneers are excluded. Duly licensed real estate salesmen are also excluded because by section 442-a of the Real Property Law they are forbidden to receive compensation from anyone but a real estate broker by whom they are regularly employed.” (1949 Report of NY Law Rev Comm, p 617, NY Legis Doc, 1949, No. 65[G].) The stated purpose of the proposed legislation was to prevent claims such as this by requiring that all business brokerage agreements be in writing. The commission recognized, however, that many business brokers were also licensed real estate brokers whose practice was already subject to established customs of the real estate industry as well as the comprehensive licensing and regulatory scheme of article 12-A of the Real Property Law. It was, therefore, suggested that licensed real estate brokers be exempted from the strict requirements of the proposed statute and, since article 12-A also prohibited a licensed salesman’s claim for compensation from anyone other than his licensed broker, the commission obviously deemed it unnecessary to include licensed real estate salemen within the proscription of the proposed legislation (1949 Report of NY Law Rev Comm, pp 615-617). Thus, it seems clear that the commission and, presumably, the Legislature, intended a real estate sales *1054 man’s exemption to apply only in those situations where he was acting in his licensed capacity, that is, as an employee or associate of his licensed broker (cf. Minichiello v Royal Business Funds Corp., 18 NY2d, at p 526). In this case, by his own admission, the plaintiff’s “[acquisition and merger work was entirely separate” from his part-time “association” with Purvis and Brown, Inc.j an association which he characterized as nothing more than “[temporary situation in the real estate field.” Purvis and Brown did not participate in any of the plaintiff’s business brokerage activities, nor otherwise share in the responsibilities and rewards thereof. His business brokerage was a completely separate enterprise which he operated independently of his part-time, licensed association with Purvis and Brown, Inc. That independence served to remove him, in my opinion, from the statutory exemption accorded licensed real estate salesmen under section 5-701 of the General Obligations Law. And in the absence of an enforceable right in contract or quantum meruit, the alleged cause of action for conspiracy must also fail (Samit v Knapp, 144 NYS2d 164, supra).
The defendants’ motion for summary judgment is, therefore, granted and the amended complaint is, in all respects, dismissed.