MARK BLYE et al., Appellants, v COLONIAL CORPORATION OF AMERICA et al., Respondents.

First Department, June 21, 1984

### APPEARANCES OF COUNSEL

*Peter S. Herman* of counsel (*Rosen, Felzen & Stein* and *Feinberg & Herman,* attorneys), for appellants.

*Philip R. Hoffman* of counsel (*Thomas W. Pippert* with him on the brief; *Hawkins, Delafield & Wood,* attorneys), for American Broadcasting Companies, Inc., and another, respondents.

*John M. Delehanty* of counsel (*Joseph C. Markowitz* with him on the brief; *Parker Auspitz Neesemann & Delehanty, P. C.,* attorneys), for Colonial Corporation of America and others, respondents.

### OPINION OF THE COURT

KUPFERMAN, J. P.

The issue on this appeal is whether the Statute of Frauds is satisfied by a letter sent by one of the defendants-respondents to plaintiffs-appellants. We hold that the letter satisfies the statute, and accordingly, reverse.

Plaintiffs-appellants Mark Blye and Paul Sklar brought this action to recover a commission or finder's fee claimed

under an alleged contract with defendant-respondent Colonial Corp. of America. According to the complaint, defendant-respondent American Broadcasting Companies, Inc. (ABC), as exclusive licensing agent for indorsements by fashion model Cheryl Tiegs, requested plaintiffs to find a clothing manufacturer willing to produce a line of clothing to be marked with Tiegs' indorsement.

Ultimately, defendants-respondents ABC, Tiegs, and Kayser-Roth, the parent corporation of Colonial, entered into an agreement whereby Kayser-Roth was to manufacture a Cheryl Tiegs line of clothing to be marketed through Sears Roebuck. No provision was made under that agreement for any commission or finder's fee to be paid to plaintiffs, despite their claim to have fully performed by bringing the parties together.

The only writing signed by any of the defendants that reflects the agreement claimed by plaintiffs is a letter dated November 28, 1979, signed by Allen Fredman, vice-president of Colonial, and addressed to plaintiffs. The letter states in part: "Based on our previous meetings relating to the pursuit of a licensing agreement of Cheryl Tiegs name — in conjunction with Colonial's female apparel products, we will proceed on the following broad premises." It then discusses compensation terms to be negotiated with Tiegs and ABC.

With respect to plaintiffs' compensation, the letter states the following: "The commission paid to messrs. Blye and Sklar can be negotiated at .005% [plaintiffs maintain this was an error and should read .5%] for total volume done with an unlimited ceiling or on the basis of 1% base with percentage breaks at future ceiling levels. This is also an area for future discussion." The letter concludes with the following: "The above information represents in broad terms *the understanding we have reached* upon which I will now proceed to develop a presentation to our major chain customers with the ultimate goal being their commitment to a Cheryl Tiegs Apparel concept covering the guarantee commitment." (emphasis supplied).

*Special* Term granted motions by defendants for summary judgment dismissing the complaint on the ground that the action is barred by the Statute of Frauds (General

Obligations Law, § 5-701, subd a, par 10),* stating that the letter is "nothing more than a discussion of ongoing negotiations."

We disagree. Except for the absence of a firm agreement as to the amount of plaintiffs' compensation, the letter adequately sets forth the terms of the contract claimed by plaintiffs. The Court of Appeals has held that where an otherwise sufficient writing exists which includes "by reasonable construction and necessary implication a promise to pay compensation for the services alleged to have been rendered" (see *Cohon & Co. v Russell,* 23 NY2d 569, 574), the absence of a specific term as to the amount of compensation does not preclude an action in *quantum meruit* for the reasonable value of the services rendered. As the court in the *Cohon* case stated: "if it does not appear that there has been an agreement on the rate of compensation, a sufficient memorandum need only evidence the fact of plaintiff's employment by defendant to render the alleged services. The obligation of the defendant to pay reasonable compensation for the services is then implied." (23 NY2d, at pp 575-576.)

Our conclusion that the letter adequately evidences the fact of plaintiffs' employment to act as finders is further buttressed by a letter dated June 9, 1980, from Fredman to Herb Mendelsohn of ABC, in which he states in part: "As we discussed a few weeks ago, it is our position that Blye and Sklar in seeking out additional manufacturers for the ABC apparel concept should be renumerated [*sic*] on your end and not on ours."

Inasmuch as the two letters heretofore described demonstrate the fact of employment of plaintiffs by defendant Colonial, the purpose of paragraph 10 is fulfilled. As the Law Revision Commission stated in its recommendation to the Legislature upon proposing the enactment of the pre-

---

* Section 5-701 (subd a, par 10) of the General Obligations Law provides in pertinent part:

"Agreements required to be in writing

"a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking * * *

"10. Is a contract to pay compensation for services rendered in negotiating * * * of a business opportunity * * * 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction."

decessor statute to paragraph 10: "In recent years there have been a substantial number of reported cases of claims for commissions for services rendered in the sale of a going business or a business opportunity. Under existing law there is no requirement that business brokers' contracts for commissions be in writing. The nature of the transactions is such that, in the absence of the requirement of a writing, unfounded and multiple claims for commissions are frequently asserted, and employers often seek to escape liability by denying the fact of employment. These controversies are commonly resolved by juries on conflicting testimony, with the consequent danger of erroneous verdicts" (NY 1949 Report of NY Law Rev Comm [NY Legis Doc, 1949, No. 65 (G)], p 615; see *Minichiello v Royal Business Funds Corp.,* 18 NY2d 521, 526).

*Minichiello (supra)*, relied on by Special Term to deny recovery in *quantum meruit,* is distinguishable from the present case; in *Minichiello* no writing whatsoever was presented to evidence the alleged contract for a finder's fee.

Perhaps the words of Williston, quoted by the Court of Appeals in the *Cohon* case *(supra)* may apply here: "The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made" (4 Williston, Contracts [3d ed], § 567A, pp 19-20; see *Cohon & Co. v Russell,* 23 NY2d, at p 574).

We do not at this time pass on the validity of plaintiffs' claims against ABC.

Accordingly, the order of the Supreme Court, New York County (Ascione, J.), entered on February 7, 1984, which granted defendants' motions for summary judgment dismissing the complaint, should be unanimously reversed, on the law, and the motions should be denied, with one bill of costs.

ASCH, FEIN and KASSAL, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on February 7, 1984, unanimously

reversed, on the law, and the motions denied. Appellants shall recover of respondents one bill of $75 costs and disbursements of this appeal.