**STATE of Tennessee, Appellee,**

v.

**Paul Deral HORTON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 3, 1994.

Gregory D. Smith, Appellate Counsel, Russel A. Church, Trial and Appellate Counsel, Asst. Public Defender, Clarksville, for appellant.

Charles W. Burson, Atty. Gen., Eugene J. Honea, Asst. Atty. Gen., Nashville, Patrick McCutchen, Dist. Atty. Gen., Arthur Bieber, Asst. Dist. Atty. Gen., Clarksville, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Paul Deral Horton, was convicted in the Montgomery County Circuit Court for possession of cocaine with the intent to sell, a Class B felony. He was sentenced to eighteen years in the Department of Correction as a Range II, multiple offender. In this appeal as of right, he contends that the evidence was insufficient to convict him of felonious possession and that the trial court erred in determining he had sufficient prior convictions, as defined by T.C.A. § 40–35–106(b), to be sentenced within Range II.

At the trial, Clarksville Police Officer Vann Winn testified that he and an officer Gibbs were on patrol in a police car on March 26, 1992, when they observed several individuals near Haynes' Pool Room. As the officers approached, the defendant broke away from the group and the officers began to pursue. Winn stated that after the defendant moved away from the group, he looked directly at the officer, threw what appeared to be a small bottle or small container down on the ground and started to move away from it. Winn, who approached in the car, stopped the defendant and patted him down. Officer Gibbs, who approached on foot, retrieved a small bottle in the area Winn told him to search. The bottle contained eleven rocks of crack cocaine.

The officers obtained a signed statement from the defendant. In the statement, the defendant admitted that he was selling crack cocaine for another person and that he had received about seventy "rocks" from that person that night. He said he had sold about fifty-nine. He said that he saw the officers, walked away, and threw the rocks where the police found them.

The defendant testified and did not deny that he was selling cocaine on the date in question. However, he claimed that the brown pill bottle containing the eleven rocks of crack cocaine which was introduced into evidence was not his. He stated that he threw down a "white chapstick bottle" that contained nine rocks of crack cocaine.

In contesting the sufficiency of the evidence, the defendant contends that the state failed to prove beyond a reasonable doubt that the brown pill bottle containing eleven rocks of crack cocaine was possessed by him. He focuses upon his claim that he possessed a "white chapstick bottle" containing nine rocks and the fact that there was no testimony that the officers directly saw him throw a brown bottle as opposed to a white bottle.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This means that the evidence favoring the state is accredited and all testimonial conflicts are resolved in favor of the state's theory. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). Under such a review, we conclude that Officer Winn's testimony and the defendant's signed statement provided ample evidence from which the trial court could rationally conclude beyond a reasonable doubt that the defendant possessed the eleven rocks of crack cocaine which were submitted into evidence.

As to his sentence, the defendant contends that the two prior convictions used by the trial court to find him to be a multiple offender should have been considered to constitute one conviction rather than two under T.C.A. § 40–35–106(b)(4), which provides as follows:

Convictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours, constitute one (1) conviction for the purpose of determining prior convictions; however, acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be a single course of conduct. . . .

The parties refer to this as the twenty-four hour merger rule. The trial court found the defendant to be a Range II, multiple offender, pursuant to T.C.A. § 40–35–106(a)(1), because he had been convicted on October 5, 1989, of both receiving stolen property worth over two hundred dollars and aggravated assault. The record reflects that on December 30, 1988, the defendant was found to be driving a stolen car and when a police officer approached him, the defendant swerved the car and drove it toward the officer. These events resulted in him pleading guilty to the two offenses for which he was convicted.

Obviously, the evidence of the defendant's receiving the stolen car and his aggravated assault of the officer who sought to stop him in the car were shown to be materially related and occurring on the same day. In fact, the record indicates that the car was stolen on the day before the assault, but it fails to show beyond a reasonable doubt that the defendant's receipt of the car was more than twenty-four hours apart from the aggravated assault. Thus, under T.C.A. § 40–35–106(b)(4), the two convictions were to be treated as one conviction for the purpose of range enhancement unless they fall within the bodily injury or threatened bodily injury exception provided by subsection (b)(4). The parties derive different interpretations from the statutory language which gives rise to potential ambiguities.

Our consideration is guided by basic rules of statutory construction. A statute should be read to give "its language its usual and ordinary meaning, thus avoiding any forced construction." *Key v. State,* 563 S.W.2d 184, 187 (Tenn.1978). However, if unresolved ambiguity remains in a penal statute such as the one before us, it should be construed in favor of the defendant. *Id.* at 188. In this respect, we note that T.C.A. § 39–11–104 requires the criminal code provisions of Title 39 to be "construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice. . . ." The Sentencing Commission Comments to this section state that the commission intended "the language of the sections themselves to be an authoritative statement of the law" while noting that "[p]rior Tennessee law required penal statutes to be strictly construed." The obvious implication of the comments is that the rules for construction of penal statutes were thought to be changed, at least as to Title 39.

■ However, aside from the statute before us being in Title 40 of the code, it appears that the sentencing commission misapprehended the relationship of the two rules. As indicated in *Key v. State, supra,* Tennessee has historically construed a statute by looking to the usual and ordinary meaning of the statutory language. This does not conflict with the rule of strict con-

struction which is applied only to unresolved ambiguities or doubtful meaning in language used in penal statutes.

> 'However, the rule [of strict construction] is applicable only to doubtful cases, and will not be applied where it would lead to absurd results. Under the rule of strict construction, such statutes will not be enlarged by implication or intendment beyond the *fair meaning of the language used,* and will not be held to include other offenses and persons than those which are clearly described and provided for, although the court may think the legislature should have made them more comprehensive.'

*State v. Richmond,* 171 Tenn. 1, 100 S.W.2d 1, 2 (1937) (emphasis added) (citations omitted). Thus, when the fair import of the language of a penal statute, in the context of the legislative history and case law on the subject, still results in ambiguity, the rule of strict construction would apply to limit the statute's application to those persons or circumstances clearly described by the statute. In other words, "[t]he rule of lenity is a tiebreaker when there is an otherwise-unresolved ambiguity." *United States v. White,* 888 F.2d 490, 497 (7th Cir.1989). This rule is more than one of convenience. The application of strict construction by which ambiguities in a penal statute are construed in favor of lenity "is rooted in fundamental principles of due process which mandate that no individual be forced to speculate ... whether his conduct is prohibited." *Dunn v. United States,* 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979); *accord State v. Richmond,* 100 S.W.2d at 3.

Both the defendant and the state seek support for their respective interpretations from the Sentencing Commission Comments to 106(b)(4). Given the fact that the legislature approved the publication of the Sentencing Commission Comments to the 1989 Sentencing Act, *see* 1989 Tenn.Pub. Acts, ch. 591, § 114, the comments may be viewed as evidence of legislative intent. *See* Sutherland Stat. Const. § 48.09 (5th ed.1992); *Minichiello v. Royal Business Funds Corp.,* 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793 (1966), *cert. denied,* 389 U.S. 820, 88

S.Ct. 41, 19 L.Ed.2d 72 (1967). The comments to which both parties allude are as follows:

> Although the commission believes that multiple convictions occurring in a connected series of transactions should be considered as a single "conviction," an exception is made for prior convictions which involve bodily injury or threaten bodily injury to the person. Thus, if a defendant is convicted of two homicides, even though the homicides occurred at the same moment, such would constitute separate convictions for a subsequent violation of the law. As another example, if the defendant was convicted of robbing several people in the same store, such would constitute separate convictions for enhancement purposes for a new violation of the law. This is in accord with the policy of giving greater "weight" to crimes of violence.

The defendant sees the references to multiple convictions and to multiple acts of violence in the examples as telling. These references support the defendant's argument, but they are not necessarily conclusive. The state, on the other hand, contends that the expressed "policy of giving greater 'weight' to crimes of violence" means that the legislature intended to allow one prior act of violence to preclude use of the twenty-four hour merger rule. However, whether the exception were interpreted to require one or two prior acts, it would still be consistent with a policy of giving greater weight to crimes of violence. Thus, we do not believe that the comments conclusively show the legislature's intent in using the statutory language it did.

The state also contends that the fact that the 106(b)(4) exception refers to "victim" as well as "victims" shows that the legislature contemplated that the exception would apply to a single violent act. However, we believe that the reference is as likely a recognition that multiple acts resulting in bodily injury or threatened bodily injury may occur against one victim. Also, the 106(b)(4) exception relates the word "acts" with the course of conduct to which the exception applies. That is, the part of the exception providing that the prohibited conduct "shall not be construed to be a single course of

conduct" makes no sense if a single act had been contemplated. One act does not equate with a course of conduct.

The construction that the state places upon the exception would change it to provide that acts "resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be *part of* a single course of conduct." We note that such a construction conforms with the wording of the twenty-four hour merger rule which previously existed under the 1982 Sentencing Act.[1] However, the state's construction ignores the language of the present statute as it is written. Regardless of whether the legislature intended to include all of the circumstances provided in the 1982 Sentencing Act in the present statute, we cannot enlarge the statute beyond the fair meaning of the language it contains nor can we ignore the fact that the language differs materially from that in the former statute.

■ Although the meaning of the language contained in the 106(b)(4) exception may be somewhat ambiguous, its most logical reading supports the defendant's interpretation. In any event, the ambiguity should be resolved by construing the section's meaning in favor of the defendant. We conclude that the twenty-four hour merger rule exception, as worded, would apply when there is more than one previous act involving bodily injury or threatened bodily injury. Thus, if there were two aggravated assault convictions in this case, as well as a receiving stolen property conviction, the three convictions would be treated as separate convictions for range enhancement purposes. However, the exception will not apply when there is only one previous act involving bodily injury or threatened bodily injury. The two convictions in this case should have been considered to be one conviction for range enhancement purposes.

The conviction is affirmed. The sentence is reversed and the case is remanded to the trial court for resentencing.

PEAY, J., concurs.

WILLIAM S. RUSSELL, Special Judge, concurs and dissents in separate opinion.

WILLIAM S. RUSSELL, Special Judge, concurring in part and dissenting in part.

I concur in the affirmance of this conviction. I respectfully dissent from the reversal of the sentence imposed.

The majority hold that T.C.A. Sec. 40–35–106(b)(4) merges two prior felonies into one for later sentencing enhancement purposes when committed within a twenty-four hour period, even though one of them threatens bodily injury. In this case the defendant was convicted for possessing cocaine with the intent to sell. Previously he had been convicted of receiving a stolen car, and of attempting to assault (run down) the officer arresting him. Those two crimes occurred on the same day.

The majority hold that one crime of violence or threatened violence within the twenty-four hour period does not defeat the merger provision, which is this case. They conclude that in another case when there is more than one previous act involving bodily injury or threatened bodily injury within a twenty-four hour period that there would be no merger for later sentencing purposes for a subsequent crime. In other words, one act of violence or threatened violence does not defeat merger, but two or more do.

While the pertinent statute does say "acts" resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be a single course of conduct, I understand this plural to be there because this rule is applicable to all cases at all times involving all defendants.

---

1. The 1982 Sentencing Act twenty-four hour merger rule provided as follows:

    The conviction for two (2) or more felonies committed as part of a single course of conduct within a period of twenty-four (24) hours during which there was no substantial change in the nature of the criminal objective constitutes one (1) conviction for purposes of determining prior convictions under this section, but offenses resulting in bodily harm to another person committed while attempting to escape detection or apprehension, or in bodily harm to more than one person are not *part of* the same criminal objective....

T.C.A. § 40–35–106(b)(1) [repealed] (emphasis added).

It seems clear to me that the prior offense of receiving stolen property counts as one prior felony conviction. Because the second offense committed the same day, the felonious assault upon a law officer, involved threatened bodily injury, that the exception to the merger rule attached and it constituted a second prior felony, as was held by the trial judge and is insisted by the State.

I would affirm the sentence.