**LINK–HELLMUTH, INC., Appellee,**

v.

**CAREY, Appellant.**

[Cite as *Link–Hellmuth, Inc. v. Carey* (1995), 101 Ohio App.3d 604.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 94–CA–63.

Decided March 8, 1995.

*Smith & West* and *Elbert G. Smith,* for appellee.

*Myers & Frayne, Anne M. Frayne* and *Stacey M. Rubens,* for appellant.

---

BROGAN, Judge.

Appellant, Reece Carey, Jr., appeals from the judgment of the Clark County Common Pleas Court granting the appellee, Link–Hellmuth, Inc., judgment in the amount of $25,812.

In its complaint, Link–Hellmuth alleged that one of its agents entered into an agreement with Carey whereby Link–Hellmuth would provide a prospective buyer to Carey, who is a home builder, and in return Carey would pay a referral or "finder's fee" of six percent of the home's construction cost.

The plaintiff alleged that pursuant to this agreement, it referred Isaac Myers II and Patricia Southworth to Carey and he built each a home for the price of $215,000. Plaintiff sought judgment in the total amount of $25,812 as its agreed-upon compensation.

The defendant answered the complaint, denying the existence of the alleged agreement and asserting the defense of the Statute of Frauds, R.C. 1335.05.

The trial court found for the plaintiff without specifically addressing the Statute of Frauds defense. The defendant timely appealed and raises two "arguments" which we will construe as assignments of error: (1) that no contract existed between the parties entitling the plaintiff to receive a "finder's fee," and (2) that any alleged oral contract between the parties is void for failure of compliance with the Statute of Frauds.

The plaintiff presented the testimony of Andrew Hellmuth, vice president of Link–Hellmuth, and one of Link–Hellmuth's agents, David Winebrenner.

Winebrenner testified he was a licensed realtor with the plaintiff and that plaintiff had an office policy that it charges builders a six-percent referral fee for referring clients who purchase new homes from the builder.

Winebrenner said he referred Dr. Isaac Myers to Reece Carey pursuant to this office policy in late 1991 or early 1992. Winebrenner said he had shown Dr. Myers a home which Carey had built and Myers wanted Carey to build him a

home. Winebrenner said he talked to Carey about a six-percent referral fee and Carey agreed to pay the fee. Winebrenner then introduced Myers to Carey. Winebrenner said that Carey did not mention that he had a partner in his construction business. Winebrenner stated he assumed he would be paid the fee when the construction of the Myers home was completed. He admitted the agreement was not in writing.

Winebrenner said he also entered into a similar agreement regarding the referral of Dr. Southworth to Carey. Winebrenner said he referred Dr. Southworth to Carey and Carey constructed a new home for her on a lot two doors from the Myers home. Winebrenner denied that he served as a real estate agent for either Dr. Myers or Dr. Southworth in the transactions.

Winebrenner said Carey told him he wasn't making any money on the Myers home and he couldn't pay him the referral fee. Winebrenner said he then informed Drew Hellmuth of the problem and Hellmuth arranged a meeting with Carey to resolve the matter. Winebrenner said Hellmuth asked Carey to sign a note evidencing the Myers referral fee and Carey said he would have to confer with his partner before signing the promissory note.

Andrew Hellmuth testified that in the spring of 1991 Carey told him he would pay a referral fee of six percent if he referred anyone to him for a purchase of a new home. He said he disseminated this information to the salespeople of Link–Hellmuth. He said he subsequently learned of Carey's specific arrangement with Dave Winebrenner and that Winebrenner was having difficulty getting paid the referral fee by Carey. He said he assured Winebrenner that Carey would eventually meet his obligation because he had always paid real estate commissions due on the sale of previously owned homes.

Hellmuth said he met with Carey and Winebrenner at the Hellmuth offices in an attempt to resolve the fee dispute. He said Carey told him he had lost money on the Myers house and could not pay the fee. Hellmuth said he asked Carey to sign a promissory note reflecting the fee obligation on the Myers referral but Carey said he would have to check with his partner. Hellmuth said that was the first time he had ever heard that Carey had a business partner. He said Carey never returned a signed note to him nor ever paid the Myers referral fee.

Hellmuth said the Southworth home was begun in April 1992, three months after the Myers house was completed. He said he again met with Carey in August 1992 and again Carey indicated he couldn't pay the fee because he lost money on the Myers deal.

At the conclusion of all the evidence, the defendant moved for a directed verdict, contending that the plaintiff could not recover because the Statute of

Frauds, R.C. 1335.05, precluded plaintiff from recovering on its action. The trial court overruled the defendant's motion.

The defendant denied he entered into any oral agreement to pay the referral fees to the plaintiff. He stated he and his partner, Ernest Fairchild, agreed to build a home for Myers in the spring of 1992 and he completed the home just before Christmas 1992. He said he also agreed to build a home for Pat Southworth in late spring 1992 and that home was completed in early February 1993.

Carey admitted that David Winebrenner put him in contact with Myers and that they had discussions about the referral fee but no agreement was reached between them. He admitted he refused to sign the promissory note as requested by Hellmuth. He admitted that during his discussions with Hellmuth and Winebrenner in April 1992, he didn't tell them he didn't owe the referral fees.

■ In his first assignment, appellant contends the court erred in finding that a contract was formed because there was a meeting of minds between the parties. He also argues that there was no evidence that plaintiff's agent, Winebrenner, was the procuring cause of the sale involving the Myers home. He also argues that Southworth came to him at the recommendation of Myers, not David Winebrenner. He also argues that there was no consideration for the contract.

■ It is well settled that judgments supported by some competent, credible evidence going to all the essential elements of a case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578; see, also, *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

In the latter case, the Ohio Supreme Court noted at 79–80, 10 OBR at 410–411, 461 N.E.2d at 1276:

"While we agree with the proposition that in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The inter-play between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was

succinctly set forth in the holding of this court in *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]."

In *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 540 N.E.2d 257, the Ohio Supreme Court held that a business finder is one who finds, interests, introduces, and brings parties together for a transaction they themselves subsequently negotiate and consummate. In this case, David Winebrenner's testimony, apparently credited by the trial court, established that Carey agreed to pay plaintiff a six-percent referral fee if Winebrenner referred persons to Carey and Carey built homes for these individuals. In such an arrangement, the plaintiff qualifies as a business finder. Winebrenner's testimony established that there was present the necessary "meeting of the minds," and that he was the procuring cause of the relationship of Carey with Myers and Southworth. Although Carey contends Southworth came to him at the recommendation of Myers, not Winebrenner, the record fails to support this contention. Winebrenner's recommendation that Myers and Southworth contact Carey for construction of their new homes provided the necessary bargained-for consideration. Carey's first assignment of error is overruled.

■ In his second assignment, Carey contends that the referred agreement should not be enforced because it was not in writing as required by R.C. 1335.05. That statute provides:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate, nor to charge a person upon an agreement made upon consideration of marriage, or *upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them,* or upon an agreement that is not to be performed within one year from the making thereof * * *."

In support of his argument that an agreement to recover a "finder's fee" or commission for the sale of land, Carey cites three cases: *Legros v. Tarr, supra; Kimmel v. King* (1932), 125 Ohio St. 505, 182 N.E. 516; and *Engel v. Goldberg* (1928), 32 Ohio App. 192, 165 N.E. 592.

None of the cited cases have any application to this case. In *Legros,* the Ohio Supreme Court held that a business finder could recover from a party to an acquisition where the party or his agent misappropriates the finder's proprietary information. The court did not hold that the Statute of Frauds applies to finder's fees relating to real estate purchases, as real estate was not involved in the case. It noted in a footnote that New York's Statute of Frauds explicitly requires business finders' contracts to be in writing where the negotiation concerns a

business opportunity or the purchase of real estate. 44 Ohio St.3d at 8, 540 N.E.2d at 264–265, fn. 2.

In *Engel v. Goldberg, supra,* the Hamilton County Court of Appeals held that under G.C. 8621, 111 Ohio Laws 104, no action shall be brought upon an agreement, promise, or contract to pay any commission for sale of an interest in real estate, unless the agreement is in writing. Thus, a broker could not recover a commission for securing a purchaser for real estate, where there was no written contract between the parties, but only a verbal contract.

In *Kimmel v. King, supra,* the Ohio Supreme Court similarly held that G.C. 8621, requiring broker's commission agreements to be in writing, applied to a contract completed before the statute's amendment because its provisions were remedial in character.

G.C. 8621 was amended in 1931 to delete the requirement that agency contracts be in writing. G.C. 8621, as amended, 114 Ohio Laws 110, now R.C. 1335.05. Subsequently, the Court of Appeals for Lucas County held that a real estate broker employed under an oral agreement by the owner of real estate to find a buyer was entitled to the payment of a commission. *Biggs v. Bernard* (1954), 98 Ohio App. 451, 58 O.O. 11, 130 N.E.2d 152.

The Cuyahoga County Court of Appeals held that a contract to divide commissions with a party furnishing customers for real estate was not a payment for commissions but for services rendered and, under G.C. 8621, the contract was not required to be in writing to be enforceable since it did not relate to any interest in real estate. *McHugh v. Marshall* (1928), 30 Ohio App. 225, 164 N.E. 778. The court noted at 227–229, 164 N.E. at 778–779:

"It is plain from this aspect of the case, which is based upon the specific allegations of the petition that Section 8621 of the General Code, relating to the necessity of written contracts for the payment of commissions on the sale of real estate, does not apply, because the petition in theory and fact is not built upon such a basis. * * * Thus it is clear that plaintiff is not suing for a commission on an oral contract in the face of the statute of frauds, as amended, but is suing for the value of her services in furnishing a prospect for the purchase of real estate. In other words, the plaintiff sues upon a contract that is without the statute of frauds, and under it, if she could prove her claim, undoubtedly would have the right to recover for services performed under the contract orally made, an agreement which it was not necessary to incorporate in a written instrument, because it did not in and of itself, under the allegations of the petition, relate to any interest in real estate, but was simply a contract for the payment of a definite amount of money for the performance of certain services." See, also, *Porter v. Cirod, Inc.* (1966), 242 Cal.App.2d 761, 51 Cal.Rptr. 784.

■ Carey also contends that the alleged referral agreement should not be enforced because it was an agreement that could not be performed within one year from its making. See R.C. 1335.05.

■ A promise which is not likely to be performed within one year and which in fact is not performed in one year is still not within Statute of Frauds if at the time the contract is made, there is a possibility in law and in fact that full performance such as the parties intended may be completed before expiration of a year. *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 620 N.E.2d 996.

It is well settled in this state that if either side of a contract may be performed within one year, then such contract is not within the Statute of Frauds. *Randall v. Turner* (1867), 17 Ohio St. 262; *Cowie v. Cent. Trust Co.* (1939), 14 O.O. 185.

Nothing in the parties' agreement indicated it was not to be performed within a year. Indeed, if Winebrenner is believed, he performed his part of the agreement when he produced Myers and Southworth as potential buyers well within the one-year period. The fact that the houses were not actually completed within one year does not require this agreement to be in writing as required by the Statute of Frauds. Carey's second assignment is also overruled.

We are not unsympathetic to Carey's argument that these finder's or referral agreements should be in writing. The New York Statute of Frauds provisions referred to in *Legros* have much to commend to our legislature. In *Minichiello v. Royal Business Funds Corp.* (1966), 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793, the Court of Appeals of New York held the intention of the 1949 legislature in making the New York Statute of Frauds applicable to contracts to pay compensation for services rendered in negotiating a sale of real estate was to include "finders" of one interested in entering into such a contract. Judge Keating noted the following, 18 N.Y.2d at 527, 277 N.Y.S.2d at 272, 223 N.E.2d at 796:

"If indeed, there is any definite distinction between finders and brokers, it would probably be in the quantity of services rendered by each. It is possible for a finder to accomplish his service by making only two phone calls and, if the parties later conclude a deal, he is entitled to his commission. But the difficulty in proving services ordinarily varies in an inverse proportion to the amount of services rendered.

"Thus to include brokers and to exclude finders from the statute is to permit oral testimony in the very cases which are the least susceptible to oral proof."

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.