# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 14, 2004 Session

## STATE OF TENNESSEE v. ROBERT BANKS

**Appeal from the Criminal Court for Shelby County**
**No. GS-01052    W. Fred Axley, Judge**

---

**No. W2003-02353-CCA-R3-CD  - Filed November 1, 2004**

---

The defendant, Robert Banks, was convicted in the General Sessions Court of Shelby County of the misdemeanor offense of patronizing prostitution, fined $1000, and sentenced to twenty days in the county correctional center, to be served on weekends.  He then appealed to the Shelby County Criminal Court, where, following a bench trial, he was convicted of patronizing prostitution within a mile and a half of a school, a Class A misdemeanor, ordered to pay a $100 fine, and sentenced to eleven months, twenty-nine days, with forty-five days to be served consecutively in the county workhouse and the remainder on supervised probation.  On appeal to this court, the defendant raises two issues: (1) whether the evidence is sufficient to sustain his conviction; and (2) whether the trial court erred in denying his motion for a jury trial based on his claim of ineffective assistance of general sessions counsel.  We conclude the evidence is sufficient to sustain the conviction and the trial court did not err in denying the defendant's untimely request for a jury trial, made after his notice of appeal had already been entered.  Accordingly, we affirm the judgment of the trial court, but modify the fine imposed from $100 to $1000, in accordance with the provisions of Tennessee Code Annotated section 39-13-514(b)(3) (2003), and remand for entry of a corrected judgment to reflect the defendant's conviction offense which was omitted from the judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified and Remanded for Entry of a Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

James W. Hodges, Jr., and R. Price Harris, Memphis, Tennessee, for the appellant, Robert Banks.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Valerie Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

The defendant was arrested for patronizing prostitution on August 4, 2001, in a decoy operation conducted by undercover police officers who were working in an area of Memphis known to be frequented by prostitutes. After signing a written waiver of his right to presentment and indictment by the grand jury and to a jury trial, the defendant was tried in general sessions court and convicted on March 11, 2002. On March 14, 2002, the general sessions court entered an order, approved by the prosecutor and defense counsel, granting the defendant an appeal to criminal court. Nowhere on the order is there a request for a jury trial, and the defendant's counsel apparently did not request one when making his oral motion for appeal to the general sessions court. Subsequently, the criminal court denied the defendant's motion to have his case tried before a jury, and a bench trial was held on April 3, 2003.

Memphis Police Officer Riquel Jefferson of the Vice Narcotics Unit testified she was working as a prostitute "decoy" at the Mapco convenience store on Brooks Road when the defendant pulled into the parking lot and summoned her to his car. After a brief conversation, he asked what she was doing there and she told him she was "working." He invited her to get into his car, but she refused. He then inquired how much she charged, and she asked "for what?" When he said "sex," she asked if he had "forty." He replied that he did and again invited her into his car. Instead of complying, she told him she had her own car and he could follow her to her hotel up the street.

Officer Jefferson testified that the defendant agreed and followed closely behind her vehicle as she drove eastbound on Brooks Road, with the undercover "take-down" team, who were traveling in unmarked police cars, trailing behind his vehicle. However, when she turned left onto Directors Row, the normal route she took before the "take-down," the defendant continued straight. The take-down team stayed behind him, and the take-down occurred at that point. Officer Jefferson made a positive courtroom identification of the defendant and testified she had never seen him before August 4, 2001. She denied he called her fat, said anything that angered or offended her at the Mapco station, or that she ever offered him sex without the exchange of money. She testified the defendant never went inside the store.

The defendant testified he was a frequent customer of the Mapco store, which was located approximately one mile from his home and a quarter mile from his workplace. He said that on the day of his arrest, he was on his way to a cookout when he stopped at the store to buy a soft drink, some mints, and a headache powder. As he got out of his car, he noticed and laughed at Officer Jefferson, who was dressed in tight-fitting "Daisy Dukes shorts and a halter top" and was carrying a blond wig, which she had placed haphazardly on her head. Officer Jefferson demanded to know what he was laughing at and, after he told her she was too large for her clothing and looked foolish, accused him of calling her fat. He then continued into the store, and Officer Jefferson told him she would see him when he came back out.

The defendant testified he completed his purchases, walked out of the store past Officer Jefferson, who was talking to a man in another car, and got back into his car. However, she followed him to his car, protesting that he had promised to get together with her when he came out of the store, which he denied. She then asked him where he was going and suggested that he party with her instead. He declined, and she asked how much money he had. When he told her he did not have any money, she insisted he must because he was driving such an expensive car and told him she had a room down the street. He told her again that he had no money and "wouldn't pay [her] no way" even if he went with her to her room. She began complaining that he did not like her because she was fat and invited him again to come with her to her room, despite his repeated insistence that he had no money.

The defendant testified he finally told Officer Jefferson to get in her car and he would see her later. He said he waited in his car, drinking his soft drink and taking his headache powder, until he thought she had gone. However, when he continued on his way, she was waiting in the turn lane with her blinkers on, pulled in front of his vehicle, and began driving ahead of him down the street. She then turned off to the left, and he continued driving straight. The defendant denied he ever offered Officer Jefferson money for sex. He testified he believed she targeted him because she thought he had money and manufactured the charge against him in retaliation for his comment about her weight.

The defendant's wife, Alveretta[1] Banks, testified that the defendant left their home that evening to go to a cookout to which she had also been invited, but chose not to attend.

At the sentencing hearing, defense counsel stipulated that a police officer the State intended to call as a witness would have testified that prostitution was rampant in the neighborhood and that the offense took place within a mile and a half of an elementary school, which elevated the crime to a Class A misdemeanor. The defendant testified he accepted full responsibility for his actions and apologized for misbehaving "as far as . . . talking," but said he did not understand how his actions had constituted a crime. He acknowledged he had a prior conviction for patronizing prostitution.

Based in part on the defendant's irreverent attitude and refusal to accept responsibility for his actions, the trial court sentenced him to eleven months, twenty-nine days in the Shelby County Correctional Center, with the sentence suspended and the defendant placed on supervised probation after service of forty-five consecutive days. The trial court additionally ordered that the defendant pay a $100 fine.

---

[1] The defendant's presentence report lists the first name of the defendant's wife as "Alberta."

3

# ANALYSIS

## I. Denial of Motion for Jury Trial

The defendant first contends that the trial court erred in denying his request for a jury trial. In an April 3, 2003, "Motion for Jury Trial," the defendant asserted that he never intended to waive his right to a trial by jury and that his previous counsel's failure to request one when filing his notice of appeal was the result of inadvertence, mistake, or excusable neglect. The trial court overruled the motion, noting that the defendant had clearly failed to comply with the statute requiring that a demand for a jury trial be made at the time of the filing of the appeal. Before this court, the defendant now argues that his general sessions counsel's failure to request a jury trial constituted a deficiency in representation, which prejudiced the outcome of his case. The State responds by arguing that the trial court appropriately denied the defendant's untimely request and that the defendant has not met his burden of demonstrating that his general sessions counsel provided ineffective assistance. We agree with the State.

If the prosecutor does not object, a defendant charged with a misdemeanor greater than a small offense may waive in writing his right to a grand jury investigation and to a jury trial and have his case tried in general sessions court. See Tenn. R. Crim. P. 5(c)(2) (2004). If convicted, the defendant has a right to appeal the judgment to the circuit or criminal court for a trial *de novo*. Id. Such an appeal includes the right to a trial by jury, but only if a demand for one is made at the time of the filing of the appeal. See Tenn. Code Ann. § 27-3-131(b) (2000); State v. Jarnigan, 958 S.W.2d 135, 137 (Tenn. Crim. App. 1997) ("If a demand for a jury trial is not made at the time of the filing of the appeal, the right to a jury trial is *by statute* deemed to be waived.") (emphasis in original). In this case, the defendant signed the appropriate written waiver to have his case tried in general sessions court. Following his conviction, he failed to make any demand for a jury trial when appealing his case to the criminal court. Under such circumstances, we conclude that the trial court did not err in denying his subsequent motion for a jury trial.

Furthermore, we agree with the State that the defendant has failed to meet his burden of demonstrating that his general sessions counsel was ineffective. The defendant asserts in his brief that he informed counsel of his desire to be tried before a jury, but counsel failed to make the appropriate request for a jury trial when appealing his case to criminal court. However, the defendant provided no proof in support of this assertion. To establish a claim of ineffective assistance of counsel, the defendant has the burden to show both that his counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The defendant failed to satisfy either prong of the Strickland test.

4

## II. Sufficiency of the Evidence

The defendant next contends that the State failed to meet its burden of proving him guilty of the crime of patronizing prostitution. We review this issue under the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions *whether by the trial court or jury* shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt.") (emphasis added); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as that of a jury verdict. See State v. Horton, 880 S.W.2d 732, 734 (Tenn. Crim. App. 1994). The burden is on a convicted defendant to show that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of violating Tennessee Code Annotated section 39-13-514, which makes it a Class B misdemeanor for a person to "patroniz[e] prostitution" and a Class A misdemeanor, punishable by at least seven days incarceration and a minimum $1000 fine, for a person to patronize prostitution within one and one-half miles of any school, public or private, that conducts classes in any grade from kindergarten through grade twelve. Tenn. Code Ann. § 39-13-514 (2003). "Patronizing prostitution" is defined as "soliciting or hiring another person with the intent that the other person engage in prostitution, or entering or remaining in a house of prostitution for the purpose of engaging in sexual activity[.]" Id. § 39-13-512(3). Finally, prostitution is defined as "engaging in, or offering to engage in, sexual activity as a business or being an inmate in a house of prostitution or loitering in a public place for the purpose of being hired to engage in sexual activity[.]" Id. 39-13-512(5).

The defendant cites his and Officer Jefferson's conflicting testimony about what transpired between them to argue that the State failed to prove he offered her money in exchange for sex, and the uncontradicted evidence that he continued straight when she turned left to argue that the State failed to prove he had the necessary intent that Officer Jefferson engage in the crime of prostitution. The State responds by arguing that Officer Jefferson's testimony, taken as true, formed an adequate basis for the trial court to find the defendant guilty of patronizing prostitution. We agree with the State.

This was a classic case involving vastly differing and conflicting testimony by two witnesses, whose credibility had to be evaluated by the trier of fact. In rendering its verdict, the trial court made it clear that it accredited the officer's account of the incident over that provided by the defendant:

> I'm resolving it by the issue of credibility. I'm resolving it that in fact the testimony of the officer fits 39-13-51[4]. I accepted this case as an appeal. I do not know the outcome of general sessions nor do I care. But I do know that I find him guilty of patronizing prostitution, 39-13-51[4].

In the light most favorable to the State, the evidence was more than sufficient to sustain the guilty verdict. By Officer Jefferson's account, she was posing as a working prostitute in an area frequented by prostitutes when the defendant summoned her to his car, asked how much she charged for sex, agreed to the price she quoted, and invited her into his vehicle. When she refused and suggested he instead follow her to his hotel, the defendant agreed to do so and trailed closely behind her vehicle until she turned left, at which point he continued straight, perhaps alerted by the presence of the unmarked police cars behind him or for some unrelated reason. Regardless of his failure to follow her into the turn, the evidence of the defendant's actions and conversation up to that point was sufficient to prove beyond a reasonable doubt that he solicited Officer Jefferson with the intent that she engage in sexual activity. See State v. George Lewis Michaud, No. 01C01-9002-CR-00044, 1992 WL 41710, at *5 (Tenn. Crim. App. Mar. 6, 1992), perm. to appeal denied (Tenn. June 1, 1992) (concluding that defendant's making arrangement with boy for a sexual encounter "later that same evening and/or a future time" sufficient to prove his guilt of patronizing prostitution). At the sentencing hearing, defense counsel stipulated that the crime occurred within a mile and a half of an elementary school. We, therefore, affirm the defendant's conviction for patronizing prostitution within a mile and a half of a school. However, because the statute provides that a person convicted of patronizing prostitution within a mile and a half of a school "*shall . . .* be fined at least one thousand dollars ($1,000)," Tenn. Code. Ann. § 39-13-514(b)(3) (emphasis added), we modify the defendant's fine from $100 to $1000.

## CONCLUSION

We conclude that the trial court did not err in denying the defendant's untimely motion for a jury trial and that the evidence is sufficient to sustain the conviction. Accordingly, we affirm the conviction, but modify the fine imposed to $1000, in accordance with the statute, and remand for

entry of a corrected judgment both to reflect the defendant's conviction offense and the fact that, as required by Tennessee Code Annotated section 40-35-302(d), the defendant's "minimum service" is to be 75% rather than 100%.

                       _____
                       ALAN E. GLENN, JUDGE