IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2005

## STATE OF TENNESSEE v. COREY C. ABERNATHY

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 238263     Rebecca J. Stern, Judge**

_____

**No. E2005-00266-CCA-R3-CD - Filed December 14, 2005**

_____

The defendant, Corey C. Abernathy, was convicted after a bench trial of theft of property under $500, a Class A misdemeanor, and sentenced to eleven months, twenty-nine days, suspended to probation. On appeal, the defendant argues the evidence was insufficient to support his conviction. We conclude that the defendant was not questioned, as required, before being allowed to represent himself. Accordingly, we reverse the conviction and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded for a New Trial**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

John G. McDougal, Chattanooga, Tennessee, for the appellant, Corey C. Abernathy.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William H. Cox, III, District Attorney General; and Mary Sullivan Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

**Procedural History**

In October 2001, the Hamilton County Grand Jury indicted the defendant and his codefendant, Brian Moore, for burglary and theft of property under $500.[1] On October 31, 2002, the defendant, after firing three court-appointed attorneys, represented himself *pro se* at the bench trial. The trial court found him guilty of theft of property under $500 but acquitted him of burglary.

_____

[1] Codefendant Moore, the defendant's stepbrother, was not tried with the defendant.

Subsequently, the defendant, again *pro se*, sent two handwritten motions to the trial court requesting a rehearing, both of which were denied. The defendant apparently filed a petition for post-conviction relief[2] because the trial court held a post-conviction hearing on October 4, 2004.[3] The trial court dismissed the defendant's post-conviction petition but granted a delayed appeal.[4]

## Trial

The victim, Michael Lendley, testified that on the night of the theft, a police officer awakened him to say that his car had been broken into and the officer needed help in identifying some recovered property. Lendley identified a car stereo he bought several weeks earlier by matching the serial number of the recovered stereo to the serial number on the box he saved.

Officer Craig Nabors of the Chattanooga City Police Department testified that he was a probationary police officer working under a field training officer, Officer Wiertel, the night the victim's car was broken into. Officer Nabors said he and Officer Wiertel received a message to be on the lookout for two suspicious persons, one walking and one pushing a bicycle, who had been looking into cars. Approximately eight minutes after receiving the message, the officers located the defendant and Moore and stopped them for questioning. The defendant was carrying a backpack and Moore was pushing a bicycle that had no pedals. Nabors said the defendant gave the officers permission to search the backpack, where they found "a portable tape player, a portable CD player, two in-dash stereo car systems and also receivers and . . . a set of headphones." Officer Nabors testified that the victim was able to identify one of the car stereos as his by matching the stereo's serial number to the serial number on the box and receipt he had. On cross-examination, Nabors testified that he questioned the defendant about the theft and that the defendant claimed the backpack and its contents. Nabors acknowledged that he did not question Moore.

Officer Steven Wiertel of the Chattanooga Police Department testified that he and Officer Nabors stopped the defendant and Moore after receiving a call to be on the lookout for two men on bicycles checking out cars. Wiertel said the defendant gave Officer Nabors verbal consent to look inside his backpack, where the officers found the victim's car stereo and the other items. On cross-examination, Wiertel testified that when Nabors initially asked the defendant about the backpack, the defendant said it was his. Wiertel said when they later went to the location where the victim's

---

[2]There is nothing in the technical record showing when or how the defendant requested post-conviction relief.

[3]The defendant had the assistance of counsel at this hearing and is represented by counsel on appeal.

[4]In dismissing the post-conviction petition, the trial court noted that what the defendant was "complaining about is something [the trial court] did, not something an attorney did, so it's really not grounds for post-conviction. . . . It's really something that's more appropriate for appeal." The trial court further explained that it was granting a delayed appeal because the court felt it "probably did not advise [the defendant] of [his] right to appeal because" he represented himself at trial.

car was broken into, the defendant claimed the stereo found in the backpack belonged to Moore.[5] Asked if he thought it would take two people to steal the victim's stereo, Wiertel said, "No."

Officer Michael Hart of the Chattanooga Police Department testified that he was dispatched to the scene where he found the defendant's car with a broken window. Hart said Officers Wiertel and Nabors brought the defendant and Moore back to where the victim's car was located, and the victim then identified his stolen car stereo. The officer said that the defendant and Moore then started to argue about to whom the stereo belonged. On cross-examination, Hart acknowledged that Moore claimed the stereo belonged to him. Asked why the defendant was arrested when Moore claimed ownership of the stereo, Hart said it was because the defendant had possession of the stolen stereo.

The defendant testified in narrative form. He explained that he was with his stepbrother, Moore, when "[f]or some strange reason [Moore] was riding his bike and he veered off the road, the sidewalk and busted a car window" and then entered the car. The defendant said he screamed and continued walking but Moore eventually caught up to him where the following happened:

> [Moore] gets to me and I look at him crazy, you know what I'm saying. I knew what he did but I didn't know why and it really didn't dawn on me that he did it to steal a radio, you know what I'm saying. I grabbed the radio from him and I put it in my backpack, you know what I'm saying, I did do that.

The defendant said that when questioned by the officers as to the car stereos found in his backpack, Moore claimed them both. On cross-examination, the defendant denied knowing that Moore had stolen the car stereo from the victim's car even though he knew Moore had broken out the car window.

## ANALYSIS

### Sufficiency of Evidence

The defendant argues that the evidence is insufficient to support his conviction for theft under $500. Specifically, he argues that the trial court erred when it found him guilty of theft under $500 while finding him innocent of burglary. The State argues the evidence was sufficient to find the defendant guilty of theft under $500.

We review this issue under the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.

---

[5]Specifically, the defendant had told the officers that the stereo belonged to Elijah McCleary, Moore's alias.

Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as that of a jury verdict. See State v. Horton, 880 S.W.2d 732, 734 (Tenn. Crim. App. 1994). The burden is on a convicted defendant to show that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"Theft of property" occurs when, "with intent to deprive the owner of property, [a] person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003). "Deprive" means, among other things, to "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Id. § 39-11-106(a)(8)(A). When the value of the goods or services taken is $500 or less, theft of property constitutes a Class A misdemeanor offense. Id. § 39-14-105(1).

Viewed in the light most favorable to the State, the proof at trial established that the defendant took the stolen car stereo belonging to the victim from his stepbrother and placed it in his backpack. In his brief, the defendant argues that there was no proof that he intended to deprive the victim of his stereo and that he was only "holding the property for his brother," Moore. The evidence clearly showed that he took the radio knowing that Moore had just stolen it from the victim's car. We disagree with the defendant's thesis that his "holding the property for his brother" does not constitute depriving the victim of his property. As such, we find the evidence to be more than sufficient to find the defendant guilty of theft of property.

In addition, the defendant argues the trial court erred in finding him guilty of theft of property after finding him not guilty of burglary. Apparently, the defendant believes that once he was found not guilty of burglary, he could not then be found guilty of theft of property. He cites no law to support this contention. The trial court found the evidence did not show beyond a reasonable doubt that the defendant actually burglarized the car but did show beyond a reasonable doubt that the

defendant had possession of the stolen car stereo with the intent to deprive the owner of his property. We find the evidence supports the trial court's conclusions. As such, we find this argument to be without merit.

## Waiver of Counsel

Though not raised by either party on appeal, we are compelled to note that the trial court did not examine the defendant on the record to determine his ability to proceed *pro se*.

Both the United States and the Tennessee Constitutions grant a defendant the right to assistance of counsel in the preparation and presentation of a defense to a criminal charge. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In addition, the Sixth Amendment implicitly provides a defendant the right of self-representation. Faretta v. California, 422 U.S. 806, 819 (1975); State v. Northington, 667 S.W.2d 57, 60 (Tenn. 1984). In Tennessee, courts have recognized only two basic constitutionally-guaranteed methods of representation of a criminal defendant: *pro se* or through an attorney. These rights are alternative. A defendant has no state or federal constitutional right both to represent himself and to be represented by counsel. State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976).

In order to activate the right of self-representation, the defendant must: (1) timely assert the right to proceed *pro se*; (2) clearly and unequivocally exercise the right; and (3) knowingly and intelligently waive his or her right to assistance of counsel. State v. Herrod, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988). Generally, a defendant must assert the right of self-representation prior to jury selection to be considered timely. See id. at 629. In determining whether a defendant intelligently and knowingly waived his right to counsel, the trial court must question the defendant extensively regarding his ability to represent himself. Northington, 667 S.W.2d at 61; Herrod, 754 S.W.2d at 630. A defendant need not have "technical legal knowledge" in order to exercise his right of self-representation. Faretta, 422 U.S. at 836.

Rule 44(a) of the Tennessee Rules of Criminal Procedure states the following:

Every indigent defendant shall be entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant executes a written waiver. Before accepting such waiver the court shall first advise the accused in open court of the right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate. Any waiver accepted shall be spread upon the minutes of the court and made a part of the record of the cause.

In Smith v. State, 987 S.W.2d 871, 875 (Tenn. Crim. App. 1998), this court recommended that in cases where a defendant aspires to proceed *pro se*, the trial court should conduct its inquiry

in accordance with the guidelines contained in 1 Bench Book for United States District Judges 1.02-2 to -5 (3d ed. 1986).[6]

According to the facts set forth in Smith, upon receiving notice that the defendant wanted to represent himself, the trial court affirmed that he had that right and provided him with copies of the

---

[6]The following excerpt is from United States v. McDowell, 814 F.2d 245, 251- 52 (6th Cir. 1987) (quoting Guideline[s] For District Judges from 1 Bench Book for United States District Judges 1.02-2 to -5 (3d ed. 1986)):

When a defendant states that he wishes to represent himself, you should . . . ask questions similar to the following:
(a) Have you ever studied law?
(b) Have you ever represented yourself or any other defendant in a criminal action?
(c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)
(d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court must impose an assessment of at least $50 ($25 if a misdemeanor) and could sentence you to as much as __ years in prison and fine you as much as $__?
(Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)
(e) You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?
(f) You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.
(g) Are you familiar with the [Tennessee] Rules of Evidence?
(h) You realize, do you not, that the [Tennessee] Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?
(i) Are you familiar with the [Tennessee] Rules of Criminal Procedure?
(j) You realize, do you not, that those rules govern the way in which a criminal action is tried in [this] court?
(k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself? You cannot just take the stand and tell your story. You must proceed question by question through your testimony.
(l ) (Then say to the defendant something to this effect):
 I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.
(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?
(n) Is your decision entirely voluntary on your part?
(o) If the answers to the two preceding questions are in the affirmative, [and in your opinion the waiver of counsel is knowing and voluntary,] you should then say something to the following effect:
"I find that the defendant has knowingly and voluntarily waived his right to counsel. I will therefore permit him to represent himself."
(p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself.

indictments against him. 987 S.W.2d at 872. Later, when the defendant informed the trial court that he had negotiated a plea agreement and wanted to waive his right to a jury trial, the trial court asked him whether he was aware of his right to counsel and informed him that the court would appoint an attorney to assist with his defense if he could not afford one. The defendant waived those rights and restated his desire to proceed *pro se*. The trial court accepted his waiver of the rights to assistance of counsel and a jury trial, and then inquired as to his age, education, and physical and mental health. Id. at 873. The defendant answered the questions and stated that he was not under the influence of any intoxicants at the time of the crime or that particular moment. The trial court then advised the defendant of the maximum sentence length possible, found his guilty pleas voluntary, and imposed the agreed-upon sentences.

On appeal, a panel of this court set aside Smith's conviction and remanded the cause for a new trial based on the conclusion that, under the existing guidelines, the trial court's pre-trial inquiry into the matter "should have been more extensive." Id. at 877. Specifically, the trial court's inquiry was found inadequate based upon the following: there were no warnings of the pitfalls of self-representation; the waiver was accepted without asking about the defendant's background, education, or experience with the court system; no questions were asked regarding his understanding of lesser offenses or the elements of the offenses charged; the defendant was not asked whether he understood available defenses or the range of possible punishments; and, most importantly, the trial court failed to warn the defendant that self-representation was "unwise." Id. at 876.

In the analogous case of Northington, the Tennessee Supreme Court held that the trial court had "'wholly failed' to properly investigate [whether] the defendant understood the consequences of self-representation." 667 S.W.2d at 61. In Northington, the trial court discussed the seriousness of the charges; advised the defendant that, if he undertook to represent himself, he would be held to the same standard as a lawyer; ensured that the defendant had discussed the case with his appointed attorney; determined the age and education of the accused; and warned the defendant that proceeding *pro se* was unwise. Id. at 59. Notwithstanding these measures, the conviction was set aside because the trial court "failed to diligently examine the defendant's background and experience, failed to notify defendant as to the possible extent of any penitentiary sentence, and failed to elaborate fully to defendant why he thought it 'unwise' to waive counsel." Id. at 61.

As made apparent by these cases, the knowing and intelligent waiver of counsel by a defendant wishing to proceed *pro se* is a substantial right of the accused guaranteed by both the United States and Tennessee Constitutions. Thus, this court may address the waiver of the right to counsel and the defendant's decision to proceed *pro se* via "plain error" review where necessary to do substantial justice, even though the issue was not raised by either party in a motion for new trial or on appeal. The process of "plain error" review is embodied in Tennessee Rule of Criminal Procedure 52(b), which provides:

> An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on

appeal, in the discretion of the appellate court where necessary to do substantial justice.

In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000); State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b). For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. United States v. Olano, 507 U.S. 725, 732-37 (1993) (analyzing the substantially similar Federal Rule of Criminal Procedure 52(b)); Adkisson, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Tennessee Rule of Appellate Procedure 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. Olano, 507 U.S. at 732-37.

In the case herein, the record is fairly clear as to what happened in the trial court. After firing three court-appointed attorneys, the defendant represented himself at a bench trial. It is equally clear that a substantial right of the defendant was affected as the record is devoid of any colloquy between the trial court and the defendant as to the defendant's waiver of his right to counsel. The trial court either did not question the defendant or, if so, placed the colloquy on the minutes of the court. We determine that the defendant was prejudiced by the fact that this was not done. Thus, the trial court's failure to follow proper procedure amounted to plain error. Accordingly, the judgment of the trial court must be reversed and remanded for a new trial.

## CONCLUSION

We reverse the judgment of the trial court and remand this matter for a new trial.

_____
ALAN E. GLENN, JUDGE