IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 2, 2021 Session

## STATE OF TENNESSEE v. WILLIAM GOSSETT

**Appeal from the Criminal Court for Shelby County
Nos. 16-03828, 16-03829, 16-03845, 16-03365, 16-04244, 16-04245, 16-04246, 16-04247, 16-04248, 16-04249, 16-05601    Lee V. Coffee, Judge**

_____

### No. W2019-02282-CCA-R3-CD
_____

Defendant, William Gossett, was charged in twelve separate indictments with 26 offenses, including multiple counts of aggravated rape, aggravated robbery, aggravated burglary, employment of a firearm, and theft of property.  Defendant pleaded guilty to all 26 counts, with the trial court to determine his sentencing.  Following a sentencing hearing, Defendant received a total effective sentence of 371 years' incarceration.  The sole issue on appeal is whether the trial court properly treated Defendant's 1999 juvenile adjudications for rape of a child, where there were two victims, as multiple offenses for the purposes of determining Defendant's offender classification at sentencing.  Having reviewed the record and the briefs of the parties, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which J. ROSS DYER, J., joined.  JAMES CURWOOD WITT, JR., J., filed a concurring opinion.

Joseph McClusky, Memphis, Tennessee (on appeal); Gerald Green, Memphis, Tennessee (at trial), for the appellant, William Gossett.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Dru Carpenter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Guilty pleas*

Defendant's crimes spanned from 2012 to 2016. On September 23, 2019, Defendant pled guilty to all charges, seeking a sentence to be fashioned by the trial court. The State indicated that, had the case proceeded to trial, the State would have proven the following:

On July 4, 2012, a man entered Clarissa Alexander's bedroom window. He shined a flashlight in her face and asked for an individual named "Chris." He then took her purse and her roommate's purse and fled the apartment. A fingerprint lifted from the window matched Defendant's fingerprints.

On November 27, 2012, 16-year-old A.L.[1] was asleep in her bedroom when she heard someone entering her home. The assailant entered her bedroom and threatened to stab her. He covered her mouth and forced her to get on her knees and face the wall. He then put on a condom and penetrated her anally with his penis, causing her injury. He took her cell phone, purse, laptop, and an Xbox game console before leaving the house. A.L. crawled to her mother's room, and her mother called the police. During a subsequent search of Defendant's apartment, police found a micro-SD card containing pictures of A.L., who advised police that the pictures had been stored on the stolen phone.

On May 15, 2013, T.S. was in her bedroom when she heard the window in her living room being opened. She went to investigate and encountered a man wearing a bandana face covering. He told her that he had a weapon and ordered her back into her bedroom. While in the hallway, he asked her where she kept her money, and she replied that he could take her purse. He ordered her onto the ground and threatened to shoot her. He then ordered her to cover her face with a scarf and touch herself while he masturbated. He then took her cell phone and purse and left. During a subsequent search of Defendant's apartment, police recovered a micro-SD card containing pictures that had been stored on T.S.'s cell phone.

On October 27, 2013, A.M.J. was asleep in the living room of her apartment with her six-week-old child when someone covered her mouth and told her not to make any noise. The assailant told A.M.J. that he had a gun. He then held a knife to her, pulled her pants down, and penetrated her vaginally, using a grocery bag as a condom. When the assailant left, A.M.J. woke her husband, who ran outside and saw the assailant driving away in a vehicle with a license plate number of "C00354 or 356." A rape kit taken of A.M.J. showed that the assailant's DNA matched Defendant's DNA. Additionally, Defendant drove a vehicle with the license plate number "C0035R."

---

[1] We will refer to the minor victims and victims of sexual offenses in these cases by their initials.

On October 16, 2014, a man entered C.B.'s apartment. He entered her bedroom, armed with a black handgun, and asked for an individual named "Marcus." C.B. stated that no one named Marcus lived there. The assailant then told C.B. to get undressed, get on the bed, and "back up." He then put on a condom and penetrated her vaginally. C.B. locked herself in her bathroom, and the assailant took her wallet and left the apartment. During a subsequent search of Defendant's apartment, police found C.B.'s wallet, containing her learner's permit, debit card, EBT card, and library card.

On February 4, 2015, Terah Sturghill awoke to discover that someone had entered her home and taken several items. Items belonging to Ms. Sturghill, including her daughter's birth certificate, were subsequently found during a search of Defendant's apartment.

On March 16, 2015, an armed man entered F.P.'s apartment and demanded her cell phone. She gave him her phone. He then ordered her to come to him and turn around. When the man "lowered the gun and began messing with his pants," F.P. ran to her sister's bedroom and called the police using her sister's phone. Items stolen from F.P.'s home were later recovered during a search of Defendant's apartment.

On July 15, 2015, Katrina Shaw was awakened to a man entering her apartment and pointing a gun at her. He told her that "Michael" owed him money. He then told her to roll over and not to move. He took her purse and left the apartment. During a search of Defendant's apartment, police later found Ms. Shaw's purse, containing a Social Security letter addressed to her and two checks made payable to her.

On July 16, 2015, a man wearing a red mask and a headlamp entered R.S.'s apartment through a sliding patio door. He ordered her to get out of bed and take off her pants. He then masturbated until he ejaculated while wearing work gloves. He then penetrated R.S.'s vagina with his fingers while wearing the gloves. He then told R.S. to get her baby and get in the closet, and he left the apartment. Police found a work glove in the parking lot of R.S.'s apartment. DNA found on the glove matched Defendant's DNA profile.

Also on July 16, 2015, Robin Steele[2] called the police to report that her apartment had been burglarized. During a search of Defendant's apartment, police found two of the three items stolen from Ms. Steele's apartment: a pink jewelry stand and a pearl bracelet.

_____

[2] Although they share the same initials and were victims of offenses that occurred on the same day, Ms. Steele is not the same victim as R.S.

- 3 -

On April 10, 2016, a man armed with a handgun entered the home of J.H. and asked her where her money was. He forced her against a wall and groped her breasts and buttocks. He then wrapped a jacket around her head so that she could not see him, forced her into the closet, and told her to undress. He penetrated her vaginally, using a grocery bag as a condom. He then took items from her home and left. Defendant later admitted to police to having committed these offenses.

On May 28, 2016, Charlene Banks reported to police that one night between January 1, 2015 and November 30, 2015, she returned home and found the sliding patio door open. She thought that her grandson had left the door open, but a few days later, she discovered that her purse containing her iPad was missing. During a search of Defendant's apartment, police found personal checks belonging to Ms. Banks.

### *Sentencing hearing*

A sentencing hearing was held on November 25, 2019. The presentence report was admitted as an exhibit to the hearing, as well as a certified copy of Defendant's juvenile court record. Defendant's juvenile record showed that on February 11, 1999, Defendant was charged with two counts of rape of a child. The complaint states as follows:

> According to the police report, a five[-]year[-]old victim, A.A., contracted gonorrhea and stated . . . [Defendant] gave it to her. Another victim, N.D., age 8, stated to police [Defendant] . . . had repeated[ly] raped him. [Defendant] was visiting an uncle in Georgia and confessed to the uncle he had raped the children. [Defendant] was taken to the [d]octor and diagnosed with gonorrhea.
>
> . . . [Defendant] had admitted raping both victims on Christmas Day, 1998. He used a condom with the little boy and did not infect him with gonorrhea. He failed to use a condom with the little girl who later became ill. The little girl advised police [Defendant] began abusing her before the summer of 1998. The little boy advised [Defendant] began raping him in 1997.

Regarding the issue before us in this appeal, the trial court found at sentencing:

> The Court finds that no objections, no arguments, that Mr. Gossett, on Class A and B felonies, would be a range three offender pursuant to [Tennessee Code Annotated section] 40-35-107, a persistent offender.
>
> A finding or an adjudication that a defendant committed an act as a juvenile that would constitute a felony if committed by an adult shall be

- 4 -

considered for enhancement purposes, notwithstanding any other provisions of the law, a finding or adjudication that a defendant committed an act as a juvenile that would constitute a class A or B felony if committed by an adult shall be – mandatory language – shall be considered as a prior conviction for the purposes of this section regardless of whether the juvenile was transferred to criminal court pursuant to [Tennessee Code Annotated section] 37-1-134, or similar statutes, or other states, or jurisdiction.

In order to be a persistent offender on a class A felony, the Defendant must have two prior class A or combination of three As or Bs to be a range three persistent offender on A felonies.

[Defendant] is, in fact, a range three offender, having been adjudicated for having committed two rapes of a child when he was, in fact, adjudicated in juvenile court.

. . . . This involved the rape of a five-year-old girl and an eight-year-old boy who reported to the police that [Defendant] had repeatedly raped them.

[T]hese rapes . . . occurred on Christmas Day in 1998. He used a condom on the eight-year-old boy. Did not infect him with gonorrhea. Did not use a condom on the little girl, who later became ill from sexually transmitted diseases.

The little girl, at the age of five, told police and reported to juvenile court authorities that [Defendant] began abusing her before the summer of 1998, and the little boy told juvenile authorities and police that [Defendant] had beg[u]n raping him in 1997.

So, these are events that took place from six months to two years in which [Defendant] had engaged in raping children from five and eight, and, at the time, would have been four and six. And this is something that occurred over a long period of time for which [Defendant] was, in fact, adjudicated in juvenile court for raping these two children on Christmas Day in 1998.

He is range three. Two prior class A felonies, which would be a class A felony, rape of a child[,] even though they may have been adjudicated at the same time, those are separate offenses for sentencing purposes, because those are, in fact, violent offenses.

Having determined that Defendant had previously been convicted of two prior Class A felonies, the trial court classified Defendant as a Range III persistent offender for the current Class A and Class B felony convictions. *See* T.C.A. § 40-35-107(a)(2), (c). The trial court imposed the midpoint within the range, or 50 years for each of Defendant's Class A felony convictions and 25 years for each of Defendant's Class B felony convictions. *See* T.C.A. § 40-35-112(c)(1) and (2). The trial court classified Defendant as a Range II multiple offender in sentencing him for his Class C and Class E felony convictions and imposed the midpoint in the range of three years for his Class E felony convictions and the maximum within the range of ten years for his Class C felony convictions. *See* T.C.A. §§ 40-35-106(a)(1), (c); 40-35-112(b)(3), (5).

## *Analysis*

Defendant challenges his sentences on single narrow ground. Defendant alleges the trial court erred by finding that Defendant's juvenile adjudications involving the rapes of two child victims constituted multiple offenses, rather than a single offense, for the purpose of determining Defendant's offender classification. Defendant asserts that the rapes occurred within the same 24-hour period, and therefore, they should be counted as a single offense and the trial court should have sentenced him as a Range I and Range II offender rather than a Range II and Range III offender.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The burden is on the appellant to show that the sentence imposed was improper. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

For the purposes of setting the range of a convicted defendant's sentence, Tennessee's sentencing act categorizes defendants into different types of offenders. T.C.A. § 40-35-105 through -109. A defendant is classified as a multiple offender if he or she has at least one prior Class A or Class B felony conviction and the defendant's present conviction is for a Class A or Class B felony. T.C.A. § 40-35-106(a)(2). Alternatively, for Class C, D, or E felony convictions, a defendant must have a minimum of two prior felony convictions within the two felony classes lower than the conviction class or higher. T.C.A. § 40-35-106(a)(1). To qualify as a persistent offender, one must have committed at least two Class A felonies if the present conviction is for a Class A or Class B felony. T.C.A. § 40-35-107(a)(2). For lower felony-class convictions, one must have been convicted of five or more prior felonies two felony classes below the current felony class or higher. T.C.A. § 40-35-107(a)(1). Multiple offenders receive sentences within Range II, and persistent offenders receive sentences within Range III. T.C.A. §§ 40-35-106(c), -107(c).

Rape of a child is a Class A felony. T.C.A. § 39-13-522(b)(1). Defendant's juvenile adjudications for rape of a child, therefore, qualify as prior Class A felony convictions. T.C.A. §§ 40-35-106(b)(3)(B), -107(b)(3)(B).

Both Tennessee Code Annotated sections 40-35-106 and 40-35-107 contain what is referred to as the "24-hour merger rule": offenses occurring within 24 hours of one another are counted as a single offense when determining the offender classification of the defendant. T.C.A. §§ 40-35-106(b)(4), -107(b)(4). The 24-hour-merger rule, however, contains the exception that the prior convictions should be counted separately, even though they were committed within 24 hours of one another, if the statutory elements of the crimes include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury. *Id.*

Defendant asserts that the rapes occurred on the same day, Christmas Day, 1998. The State responds that the rapes did not occur within the same 24-hour period, noting that Defendant was accused of having raped the male child "repeatedly" since 1997 and the female child since the summer of 1998. The trial court recognized, "these are events that took place from six months to two years in which [Defendant] had engaged in raping children from five and eight, and, at the time, would have been four and six." The trial court also stated, however, that the rapes "occurred on Christmas Day in 1998" and that Defendant "was, in fact, adjudicated in juvenile court for raping these two children on Christmas Day in 1998."

Defendant argues that because the statutory elements of the offense of rape of a child do not include bodily injury, it does not qualify as an exception to the 24-hour merger rule. Rape of a child is "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." T.C.A. § 39-13-522. The statutory elements of rape of a child do not include bodily injury.

In his reply brief, Defendant asserts that the State's argument that the rapes occurred over a period of time is flawed. Defendant relies upon our supreme court's opinion in *State v. Phillips*, 924 S.W.2d 662 (Tenn. 1996), to support his argument that rape is not a continuous act, but rather "a discrete, singular act." Defendant points to language in that opinion that "[e]ach act, in our opinion, is capable of producing its own attendant fear, humiliation, pain, and damage to the victim." *Id.* at 664.

We observe that a panel of this Court cited the same language in *Phillips* to hold that the defendant's two separate acts of rape against the same victim on the same day constituted multiple offenses for the purposes of the 24-hour merger rule. *State v. James*

*Allen Bates*, No. E2003-01475-CCA-R3-CD, 2004 WL 995046 (Tenn. Crim. App. May 7, 2004), *perm. app. denied* (Tenn. Nov. 15, 2004).  In that case, the panel stated:

> Here, the Defendant raped the victim twice: once with his mouth and subsequently with his penis.  Each rape was accompanied by bodily injury and the threat of bodily injury.   This Court has held that the exception to the twenty-four hour merger rule applies "when there is more than one previous act involving bodily injury or threatened bodily injury." *State v. Horton*, 880 S.W.2d 732, 736 (Tenn. Crim. App. 1994).   We conclude that the Defendant's two separate rapes of his ex-wife constitute two separate acts for the purposes of the exception to the twenty-four hour merger rule.  *See also State v. John L. Goodwin, III*, No. 01C01-9601-CR-00013, 1997 WL 409484, at *6 (Tenn. Crim. App. July 23, 1997) (holding that the twenty-four hour merger rule did not apply to a single course of criminal conduct involving the rape and robbery of same victim because the rape involved bodily injury and the robbery involved the threat of bodily injury.).

*Id*. at *6.

This Court has also addressed the issue previously as it relates to the offense of robbery.  *State v. Darrell Johnson*, No. W2008-01725-CCA-R3-CD, 2009 WL 1564808 (Tenn. Crim. App. June 3, 2009) (concluding that the offense of robbery is excepted from the 24-hour merger rule even though it does not include the statutory element of bodily injury), *no perm. app. filed*.  In that case, the panel stated:

> It is the defendant's view that the legislature would have included the element of "bodily injury," "threatened bodily injury," "serious bodily injury," or "threatened serious bodily injury" in its definition of robbery had it intended robbery to be included in the exception to the twenty-four-hour merger rule.  We see this view untenable because, as noted by the State, such view would exclude, for example, first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide, reckless homicide, rape, and rape of a child as those offenses do not contain the precise statutory language regarding "bodily injury." *See* [T.C.A.] §§ 39-13-202, -210, -211, -212, -215, -503, -522.

*Id*. at *3.

While we acknowledge that the statutory elements of the offense of rape of a child do not include bodily injury or threatened bodily injury, we are guided by previous decisions that recognize the inherent injury to the victims of the offense.  "Every rape is

physically and mentally injurious to the victim." *State v. Kissinger*, 922 S.W.2d 482, 487 (Tenn. 1996). "It is difficult to conceive of any factual situation where the rape of a child would not *threaten* serious bodily injury." *State v. Edward Earl Huddleston*, No. 02C01-9706-CC-00228, 1998 WL 67684, at *3 (Tenn. Crim. App. Feb. 20, 1998) (emphasis in original), *perm. app. denied* (Tenn. Oct. 19, 1998). In this case, Defendant's two prior acts of rape of a child were against two separate victims. Although the juvenile matters resulted in only two adjudications, these child rapes were repeated over an extended period of time. Additionally, one of the victims contracted a sexually transmitted disease from Defendant. We are satisfied that Defendant's acts caused bodily injury, and therefore, the offenses should be excepted from the 24-hour merger rule.

We therefore conclude that the trial court properly sentenced Defendant as a Range II and Range III offender based upon his prior adjudications for two counts of rape of a child. Defendant is not entitled to relief.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE