IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville February 29, 2012

## STATE OF TENNESSEE v. DEVARIES M. LOCKE

**Appeal from the Criminal Court for Davidson County**
**No. 2009A763     Monte Watkins, Judge**

_____

**No. M2010-02247-CCA-R3-CD - Filed May 11, 2012**

_____

A Davidson County jury found appellant, Devaries M. Locke, guilty of possession of a firearm. The parties stipulated to his status as a felon, but the jury was not so informed. As a result of the jury's decision and the stipulation, appellant was convicted of being a convicted felon in possession of a firearm, a Class E felony. The trial court sentenced him as a Range II, multiple offender, to three years of split confinement with one year to serve followed by two years of supervised probation. On appeal, appellant challenges the sufficiency of the evidence to support his conviction and argues that his sentence is excessive. After reviewing the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. JERRY L. SMITH, J., not participating.

Dawn Deaner, District Public Defender; Emma Rae Tennent (on appeal) and Chase T. Smith (at trial), Assistant District Public Defenders, Nashville, Tennessee, for the appellant, Devaries M. Locke.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Jennifer McMillen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Facts and Procedural History

A Davidson County Grand Jury indicted appellant for being a convicted felon in possession of a firearm, a Class E felony. The trial court held a jury trial on May 24, 2010.

At the jury trial, Metro-Nashville Police Department Officer William Dillon testified that on September 7, 2008, he and Officer Jeffrey Mitchell were in an unmarked police vehicle working a patrol unit in downtown Nashville. The area had a large amount of vehicle and pedestrian traffic. As the officers approached the intersection of Second Avenue South and Korean Veterans Boulevard, Officer Dillon observed a black vehicle. Officer Dillon saw appellant outside the vehicle throwing punches at someone through the passenger side window of the vehicle. Appellant stepped away from the vehicle, and Officer Dillon saw that he had a gun in his right hand.

Officers Dillon and Mitchell, who were wearing their police uniforms, approached appellant when they saw him with the gun. They announced, "'Police. Drop the gun. Drop the gun,' probably at least ten times[.]" Appellant dropped the gun after the officers told him to do so eight or nine times. Officer Dillon said that appellant was waving the gun in the air and "making movements back and forth . . . on the sides, all over the place." The officers placed appellant on the ground, handcuffed him, and took him into custody.

Officer Dillon testified that appellant was irate and screaming that he wanted the officers to kill him. Appellant did not say anything to Officer Dillon about having been in a fight. Officer Dillon said that they did not stop the black vehicle at the scene because their attention was on appellant. Officer Dillon did not see anyone try to pull appellant into the vehicle, try to grab appellant, or pull a gun on appellant. Officer Dillon did not suspect that appellant had the gun to protect himself.

On cross-examination, Officer Dillon testified that he could only observe appellant throwing punches and could not see what was going on inside the vehicle. He said appellant had a gun in his hand when he backed away from the vehicle. As the officers approached appellant and the vehicle, the vehicle drove away. Officer Dillon did not recall whether he initially activated the police vehicle's blue lights, but he said that he activated them after the incident because of the traffic.

Officer Dillon testified that the gun the officers confiscated from appellant was not loaded. They did not have the gun tested for fingerprints, and Officer Dillon did not know whether anyone had used it in other crimes.

-2-

Officer Jeffrey Mitchell, with the Metro-Nashville Police Department, testified that on September 7, 2008, he was riding with Officer Dillon in an unmarked police vehicle. The officers saw appellant beside a vehicle that was in the intersection of Second Avenue South and Korean Veterans Boulevard. Appellant appeared to be punching someone inside the vehicle.

The area of the incident had very heavy vehicle and pedestrian traffic that night due to Tennessee State University's homecoming and a concert. When the traffic began to clear, the vehicle drove away, and appellant walked toward the sidewalk. Appellant turned and Officer Mitchell saw that appellant was carrying a gun. The officers exited their vehicle and repeatedly commanded appellant to get on the ground and drop his weapon. The officers had to repeat the command several times before appellant complied. Officer Mitchell said that for a moment "it seemed like [appellant] was undecided, before he finally tossed [the gun] off into some nearby bushes."

Officer Mitchell "covered" appellant with his firearm while Officer Dillon handcuffed him. Appellant was crying and "very upset." He repeatedly told the officers to shoot and kill him. Appellant had a strong odor of alcohol, slurred speech, and appeared intoxicated. He never stated to Officer Mitchell that he was in danger or that anyone in the vehicle had tried to hurt him. The officers seized the gun from appellant. During the trial, Officer Mitchell identified a gun as the one they confiscated from appellant.

On cross-examination, Officer Mitchell testified that neither he nor Officer Dillon could see anyone inside the vehicle because appellant was blocking the passenger side window. After the altercation, appellant did not conceal the gun. He walked to the sidewalk at a "leisurely pace" and did not flee the scene. The officers did not conduct any tests to determine whether appellant was intoxicated. Officer Mitchell stated that it was possible that appellant was in a state of shock. According to Officer Mitchell, appellant did not raise the gun or point it. Officer Mitchell did not fingerprint the gun, which was not loaded.

The officers did not see appellant with the gun until the vehicle drove away. Officer Mitchell did not pursue the vehicle because appellant, who was the immediate threat, diverted his attention. The officers did not get close enough to the vehicle to see its license plate. The officers carried a portable radio, and their police vehicle had a radio in it. They did not use their radio to notify dispatch about appellant until after they had taken him into custody because they did not have time.

At the close of the State's proof, appellant moved for a judgment of acquittal, which the trial court denied. Appellant waived his right to testify and did not put on any proof. The jury convicted appellant of possession of a firearm. The defense had already stipulated to

appellant's prior felony conviction. Thus, appellant was a convicted felon in possession of a firearm.

At the sentencing hearing, the State relied on the presentence report. Appellant testified that he had violated his parole from a twelve-year sentence for a Williamson County drug conviction. He was also serving a concurrent sentence for another drug conviction. Appellant did not have any prior weapons charges. At the time of the sentencing hearing, he had been in the Tennessee Department of Correction for approximately two years. While in the Tennessee Department of Correction's custody, he participated in the "HVAC" class but could not complete it because of his "court situation."

Appellant grew up in Franklin, Tennessee, and his family still lived in Franklin. Appellant did not have any children. He had a high school diploma. Appellant had worked many jobs, including working at Goodwill and general labor work. He could not keep a job, however, because he was repeatedly incarcerated. Appellant was twenty-eight years old and had been incarcerated since he was sixteen.

Regarding the underlying offense, appellant said that a man pulled up to him and asked him to come to the vehicle. Appellant went to the vehicle, and the person in the vehicle began talking to him about a woman. Appellant had "words" with the man, and the man pulled a gun on him. Appellant "rushed in the car and grabbed the gun." Appellant and the man fought over the gun, and appellant took the gun away from him. When appellant grabbed the gun, the man in the vehicle drove away. Police officers drew their guns on appellant and told him to drop to the ground. Appellant said that he dropped to the ground as they ordered.

Appellant testified he had never been in a situation involving violence or guns and said he was remorseful for the present situation. Appellant stated he was "trying to get fast money." He said he realized that was "not the way to go." He testified that he had no choice but to take the gun from the man in the vehicle because his "life was on the line." He did not know how the gun became unloaded and thought the clip must have fallen out in the man's vehicle. Appellant did not understand why the officers did not go after the man in the vehicle. Appellant claimed that until the incident with the gun, he had done everything that he was supposed to do while on parole.

On cross-examination, appellant testified that he was convicted of his first felony in 2002 for selling crack cocaine in Franklin. He received an eight-year sentence on probation for that offense. As part of his probation, he had to attend a boot camp and three Narcotics Anonymous meetings per week. He was also ordered to receive inpatient treatment for twenty-eight days. Appellant said he attended the meetings and went for outpatient treatment

in Franklin. Authorities served appellant with a sealed indictment on the day he completed his boot camp program. Appellant said that in Franklin, "they don't just come and get you right then; they let indictments stack up on you." According to appellant, that was why he had so many drug charges.

Appellant admitted that he had been in trouble since he was sixteen years old. He agreed that he had never been able to handle alternative sentencing. Appellant did not have a drug problem and said that he did not have any mental health problems before he was incarcerated. He did not have any physical disabilities. Appellant denied telling the officers that he was from Franklin and surmised that they must have seen it on his paperwork. He further denied telling the officers that he had the gun because he was from Franklin and did not trust people in Nashville.

After hearing the evidence, the trial court sentenced appellant as a Range II, multiple offender. The court found that confinement was necessary to avoid depreciating the seriousness of the offense. The court further found as enhancement factors that appellant had a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range and that appellant committed the felony while released on parole. Because appellant was on parole when he committed the instant offense, the court ordered him to serve his sentence consecutively to the sentence he was serving at the time of trial. *See* Tenn. R. Crim. P. 32(c)(3)(A). The court sentenced appellant to three years of split confinement with one year to serve in the department of correction followed by supervised probation. The trial court subsequently denied appellant's motion for new trial. Appellant timely appealed.

## II. Analysis

### A. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to convict him. The State responds that any rational trier of fact could find appellant guilty beyond a reasonable doubt, and the record supports the sentence imposed by the trial court. We agree with the State.

It is well established that once a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Thus, on appeal, a convicted defendant bears the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). The jury's verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. The trier of fact resolves all questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court does not attempt to reweigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Moreover, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). We apply these rules to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Appellant does not dispute his status as having been previously convicted of a felony drug offense. He only contests the sufficiency of the evidence of his possession of the firearm, arguing that he did not intentionally, knowingly, or recklessly possess the gun. Tennessee Code Annotated section 39-17-1307(b)(1)(B) provides, in pertinent part: "A person commits an offense who possesses a firearm, as defined in § 39-11-106, and . . . [h]as been convicted of a felony drug offense." This statute contains no mens rea requirement. *See id*. § 39-11-301(b) ("A culpable mental state is required . . . unless the definition of an offense plainly dispenses with a mental element."); *Crittenden v. State,* 978 S.W.2d 929, 930 (Tenn. 1998) (when proscriptive statute neither expressly requires nor plainly dispenses with the requirement for a culpable mental state, intent, knowledge, or recklessness suffices to establish the necessary culpable mental state). Thus, to sustain the conviction, the State was required to prove that appellant intentionally, knowingly, or recklessly possessed a firearm after having been previously convicted of a felony drug offense. As provided in Section 39-11-106(a) of Tennessee Code Annotated:

> (11) "Firearm" means any weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use[.]
>
> . . . .
>
> (18) "Intentional" means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

. . . .

(20) "Knowing" means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result[.]

. . . .

(31) "Reckless" means that a person acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of, but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint[.]

Tenn. Code Ann. §§ 39-11-106(a)(11), (18), (20), (31) (2010).

Viewed in the light most favorable to the State, the evidence shows that Officers Dillon and Mitchell were patrolling downtown Nashville when they observed appellant in an altercation with someone in a vehicle. After the vehicle drove away, the officers observed appellant holding a gun. The officers repeatedly told appellant to drop the gun, but he did not immediately comply. From this evidence, a rational trier of fact could have found that appellant had the "conscious objective or desire" to possess a firearm. Tenn. Code Ann. § 39-11-106(a)(18) (2010). Appellant was aware that he had a gun, and thus, he knowingly possessed it. Further, the trier of fact could have found that appellant acted recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the officers confronted appellant and he continued to hold the firearm. The jury obviously accredited the testimony of the officers. Based on the evidence at trial, we conclude that a rational trier of fact could have found appellant guilty beyond a reasonable doubt. Appellant is not entitled to relief on this issue.

*B. Sentence*

Appellant argues that the trial court erred in imposing an "enhanced three-year sentence." Specifically, appellant argues that the trial court erred by applying an inapplicable enhancement factor and by failing to apply a mitigating factor.

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2010). We condition this presumption upon "the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We do not apply the presumption to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court predicated upon uncontroverted facts. *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In conducting a de novo review of a sentence, we must consider (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel about sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Commission Cmts.; *Ashby*, 823 S.W.2d at 169.

When imposing a sentence within the appropriate range of punishment for a defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210 (2010). From this, "the trial court is free to select any

sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting Tenn. Code Ann. § 40-35-210(d)). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Id*. at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007) *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that do not bind the trial court; however, the trial court is required to consider them. *See id*. § 40-35-210(c). Although the application of factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court is also required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e).

Here, the trial court sentenced appellant to three years as a Range II, multiple offender. The court ordered that appellant serve one year in confinement and the remainder on supervised release. Appellant's sentence in this case is consecutive to appellant's twelve-year sentence in an unrelated case. As a Class E, Range II felony offender, he was subject to a sentence between two and four years. *See id*. § 40-35-112(b)(5).

When sentencing appellant, the trial court found as enhancement factors that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and that appellant was on parole at the time he committed the felony. *Id*. § 40-35-114(1), (13)(B). The trial court did not find any mitigating factors. Appellant argues that the court erred when it applied as an enhancement factor that he had a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range. He contends that the State did not prove that his three prior felony convictions with the same offense dates and the same disposition dates "could properly be considered separate offenses for purposes of enhancement." We disagree.

The record supports the trial court's finding that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. The presentence report shows that appellant has four prior felony convictions. One prior conviction was for an offense that occurred on February 16, 2002. The three remaining convictions were for offenses that occurred within a twenty-four-hour

period on July 15, 2002. While the trial court was required to treat each offense as a single conviction for determining the sentencing range, the twenty-four-hour merger rule does not apply to sentence enhancement. *See* Tenn. Code Ann. § 40-35-106(b)(4) (2010) ("[M]ultiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions."); *State v. Lawrence Hailey*, No. W2009-00759-CCA-R-3CD, 2010 WL 2219574, at *11 (Tenn. Crim. App. May 24, 2010) ("the '24-hour merger rule exception' applies only to the use of prior convictions to determine a defendant's range, not to determine the application of enhancement factor (1)."); *State v. Horton*, 880 S.W.2d 732, 734 (Tenn. Crim. App. 1994) (noting that under Tennessee Code Annotated section 40-35-106(b)(4), defendant's two convictions were to be treated as one conviction for the purpose of establishing defendant's sentence range unless they fell within the bodily injury or threatened bodily injury exception). Thus, although appellant's three convictions on July 15, 2002, merged for purposes of establishing his sentencing range, they did not merge for purposes of applying sentence enhancement factor (1).

Moreover, the record supports the trial court's consideration as an enhancement factor that at the time appellant committed the felony he was on parole. *State v. Julius Cameron Hill*, No. M2007-00133-CCA-R3-CD, 2008 WL 2521442, at *5 (Tenn. Crim. App. June 25, 2008); *see* Tenn. Code Ann. § 40-35-114(13)(b) (2010). It is undisputed that appellant was on parole when he committed the underlying offense. The trial court sentenced appellant to three years, which is the middle of his sentencing range. Despite appellant's recent failures at measures less restrictive than confinement, the court suspended two years of appellant's sentence on supervised release. We conclude that the enhancement factors applied by the trial court were sufficient to support the sentence.

Appellant further argues that the trial court should have applied as a mitigating factor that appellant "although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." Tenn. Code Ann. § 40-35-113(11) (2010). Specifically, appellant argues that he was involved in a heated confrontation, after which he was left holding a gun. He argues that he had no prior arrests for violence or weapon possession and that he was doing well under the terms of his parole until this incident.

The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *Carter*, 254 S.W.3d, at 345. The burden of proving applicable mitigating factors rests upon the defendant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at * 6 (Tenn. Crim. App. Sept. 18, 1995). The record does not reflect that this offense was committed under unusual circumstances. It instead shows that appellant was engaged in a fist fight with someone in a vehicle in the middle of a crowded intersection. After the vehicle left the scene, officers observed appellant with a gun. After the officers

commanded appellant to drop the weapon several times, he finally complied. Although appellant had no prior arrests for violence or weapon possession and was doing well under the terms of his parole until this incident, the record shows that he had a history of criminal convictions. "[A]n appellant's criminal history may be relevant in determining whether a sustained . . . intent to violate the law motivated criminal conduct." *State v. Jama Elaine Penley*, E2003-00820-CCA-R3CD, 2004 WL 1056496, at *24 (Tenn. Crim. App. May 11, 2004) (citing *State v. Lee Roy Gass*, No. E2000-00810-CCA-R3-CD, 2001 WL 767011, at *17 (Tenn. Crim. App. July 3, 2001)). The record does not support the application of this mitigating factor; thus, we conclude that the trial court did not err in declining to apply it. Accordingly, appellant is not entitled to relief on this issue.

The trial court denied full probation in this case and ordered appellant to serve a sentence of split confinement. A court no longer presumes that a defendant is a favorable candidate for alternative sentencing under the revised Tennessee sentencing statutes. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2010).

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*Id*. § 40-35-103(1). Furthermore, the trial court should examine the defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. *Id*. § 40-35-103(5).

The trial court properly denied full probation to appellant. The court sentenced appellant as a Range II offender. Thus, he was not a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6) (2010). Although not a favorable

candidate, appellant was still eligible for alternative sentencing because his sentence is three years. *See* Tenn. Code Ann. § 40-35-303(a) (2009) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less[.]"). This record would have supported a sentence of confinement in the Tennessee Department of Correction. The trial court did not err by rejecting full probation and awarding split confinement.

The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offense. The court noted that appellant committed the underlying crime while on parole. Although measures less restrictive than confinement have recently and frequently been applied unsuccessfully to appellant, the trial court nevertheless granted appellant an alternative sentence of split confinement with two years of supervised release. The sentence imposed by the trial court is not greater than that deserved for the offense. We find no error in the sentence imposed by the trial court.

III. Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE